(No. 12536.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. RALPH WRIGHT, Plaintiff in Error.

*Opinion filed April 15, 1919.*

1. CRIMINAL LAW—*a new trial will not be granted for merely cumulative evidence.* A new trial will not be granted upon the ground of newly discovered evidence where such evidence is simply cumulative and inconclusive or where there has been a want of proper diligence to procure the evidence on the trial, but to justify a new trial the newly discovered evidence must appear to be such as will probably change the result.

2. SAME—*when new trial should be granted for newly discovered evidence.* Where it is shown, on motion for new trial, that there is newly discovered evidence, not cumulative, in regard to a particular point, the importance of which could not have been foreseen and which strengthens the view of the court that justice has not been done, a new trial should be granted to the defendant.

3. SAME—*drunkenness is no excuse for crime except as provided by statute.* Neither at common law nor under the statute is drunkenness any excuse for crime except as provided by the statute in some cases requiring the existence of criminal intent.

4. SAME—*when court should permit liberal examination of defendant's former associations.* Where a defendant is charged with the theft of an automobile because he was found asleep in the car when it was discovered on the highway, and his defense is that he did not know the car was stolen but had been invited to ride with companions who had left him there drunk, the court should permit a liberal examination as to the defendant's former association with his companions.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. FRANKLIN H. BOGGS, Judge, presiding.

FRANK T. CARSON, and W. A. PERKINS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LOUIS A. BUSCH, State's Attorney, EDWARD C. FITCH, CHARLES F. MANSFIELD, and HAROLD D. ROTH, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error, Ralph Wright, was indicted, tried and convicted by a jury in the circuit court of Champaign county on the charge of grand larceny. Judgment was entered on the verdict and he was sentenced by the court to an indeterminate sentence in the State penitentiary. This writ of error has been sued out to review the judgment of the circuit court.

Plaintiff in error, a man thirty-five years of age, resided in Tolono, Illinois, in July, 1918, with his family. On the night of July 12 a Ford automobile was stolen from a corn-crib garage on the farm of Fred Stevens. The machine belonged to Ray Dye, who lived on said farm, which was located about six miles southwest of Sadorus. The machine was discovered by Oscar Hall the next morning about three miles west of Sidney, in the middle of the road in front of Hall's farmhouse, and plaintiff in error was lying asleep in the front seat. The towns of Sadorus, Tolono, Philo and Sidney are all located on the Wabash railroad, in Champaign county, in the order named, at intervals of about five miles, Sadorus being farthest west. Hall's farm is between Sidney and Philo and about eighteen miles northeast of the farm from which the automobile was stolen. The automobile was placed in the corn-crib garage on the night of July 12, about ten o'clock. Shortly after five o'clock in the morning the owner discovered that it was gone. He and his employer, Stevens, followed the tracks of the car from the corn-crib into the public highway and then as far as Sadorus but were unable to follow them further. Dye testified that the car was worth $300. About five o'clock on the morning of July 13 Hall heard the crash of a car upon the highway, as if hitting something. When he got up, shortly after, he saw the car standing in the middle of the road, almost in front of his farmhouse, and went to see if it had been wrecked,

and found plaintiff in error, whom he did not know, asleep on the front seat. He did not awaken him but returned to his house and telephoned C. C. McElwee, at Sidney, an employee of the county, telling him of the finding of the car and the general situation. McElwee immediately came to Hall's residence, and finding plaintiff in error still asleep, made a search of his clothes for a revolver, but found none, and then awakened him in the presence of Hall, and plaintiff in error's first question was to ask where he was. On being questioned he stated the machine was not his; that he had been with a couple of fellows in the automobile; that he became acquainted with them a few days before at Westville but did not know their names. McElwee called up the deputy sheriff, who came and recognized plaintiff in error and asked him whose machine it was, and he replied that it did not belong to him; that he had been with two fellows that had the car. The deputy sheriff then got into the car and drove it to Urbana, with plaintiff in error as a passenger. The machine, when found, had one of the tires off, the license plate was gone and the steering gear out of order. The tracks showed that the machine had been run in a crooked path for some rods back. A heavy dew had fallen in the night, making it possible to track the car both on the road from the Stevens farm and on the road where it was found. Hall and McElwee both testified that there was no indication that anyone had alighted from the car at the point where it was found, before plaintiff in error was awakened.

The evidence of plaintiff in error and the witnesses sworn on his behalf was to the effect that on the night of July 12 he was at his home in Tolono; that his father, a brother, mother and three men were there with him during the evening; that his father left between ten and eleven o'clock, and that the visitors, Munns and Maxwell, remained until about three o'clock; that just before they left two men drove by in two cars, going east past the

house, and then came back and stopped and asked plaintiff in error if he had any beer; that he told them no but that he had a little whisky, and they all drank; that he had been drinking whisky before during the evening; that they asked him to go back to Westville with them, and as he was going there the next day anyway, he went along with them; that during the trip they had a good deal of tire and engine trouble with the Ford car, and that he finally got out of the other car and got in the Ford, and that was the last he remembered until he was awakened by Hall and McElwee in the morning; that he did not know who his two fellow-travelers were, except that he had met them a few days before in a saloon at Westville and that they had told him they were real estate men; that they had brought him home in their car from Westville to Tolono the first part of the week; that he did not know the numbers were off the Ford car and did not know it was stolen; that he had been working all day on his father's farm, putting up hay; that he had been drinking before these men came with these cars and drank some more whisky with the men before they left. His father testified, corroborating him as to being at his home with the three other men all the evening until about eleven o'clock. Munns testified that he lived at Decatur and was a car inspector for the Wabash railroad, and that he and Maxwell were with plaintiff in error at his home the night in question from about eight o'clock until three the next morning; that they had something to drink that night; that he saw two automobiles come past the place, driving east, at about the time they were leaving, at three in the morning; that after going a little way east the cars turned and came back to plaintiff in error's place; that plaintiff in error was not away from the place that night until after witness and Maxwell left; that the plaintiff in error was pretty drunk and rowdy and talked loud. Maxwell, a well-driller, testified to the same effect. George Shipley and his wife lived a short distance

east of plaintiff in error. Shipley testified that he spent part of the evening with plaintiff in error and left about ten or eleven o'clock; that about three in the morning two automobiles came up and stopped in front of his house and the occupants asked him if the plaintiff in error lived there and that he told them where plaintiff in error lived. Shipley's wife testified that she heard this inquiry and answer, and that the automobiles turned around and went back toward Wright's house. George Wall and his wife, other neighbors, testified that two machines stopped in front of their house about three in the morning and that one of the men came to the house and wanted to know if Wright lived there, and that Wall directed them to the next house west, and the machines then went in that direction. Hall testified that plaintiff in error, when awakened in the morning, in answer to questions, said that he lived on a certain street in Danville. Plaintiff in error denied so stating but testified that he did say he was going to Westville. There is some testimony by the sheriff's deputy to the effect that plaintiff in error told him on the morning he was taken into custody that he was going to Champaign. There are perhaps some other inconsistencies testified to by some of the witnesses in the statements made by plaintiff in error as to his actions on the night in question, but we deem none of them of so material a character as to refer to them specifically.

It is most earnestly urged by counsel for plaintiff in error that the trial judge improperly overruled a motion for new trial, and that the motion, because of the showing made by affidavits of newly discovered evidence which they insist was very material as to the merits, should have been granted. The affidavits of Frank E. Holliday and John E. Meath presented in support of this motion stated, in substance, that on July 13, when returning home from the city of Champaign at about two o'clock that morning, they met two machines on the Sadorus road, two miles

west of Tolono; that one of these machines was a run-
about car and the other a Ford on which there were no
license numbers. The general description of these machines
as given in the affidavits of Meath and Holliday was simi-
lar to the description of the machines given by plaintiff
in error. The affidavits stated that these two machines
were headed towards Tolono and were stopped in the road;
that the occupants seemed to be in some trouble about the
operation of the Ford car, and as Holliday was an ex-
pert machinist they stopped and asked what was the mat-
ter. They also asked why there were no numbers on the
Ford car, and the two men answered that they had traded
for the car that day in Decatur. Affiants deposed that
they did not know either of these men but that plaintiff
in error was not with them. The affidavit of James Bates,
also filed in support of the motion for new trial, was to
the effect that he was a farmer, and that while bringing
medicine for a sick horse about daylight on the morning of
July 13 he observed two machines in the highway east of
Tolono; that there were three men with the machines, one
of them being Wright and the other two he did not know;
that these machines were standing still and one of them
was a Ford without numbers on it. The affidavits of plain-
tiff in error and his attorneys were also filed in support
of the motion, to the effect that they knew nothing about
the testimony of Holliday, Meath and Bates until after the
verdict had been found in this case. It is insisted by coun-
sel for plaintiff in error that this evidence so strongly cor-
roborates his story that it would certainly have had great
influence with the jury in deciding whether or not he had
anything to do with stealing the automobile in question,
while counsel for defendant in error urge that the evidence
is simply cumulative and under the rulings of this court
would not justify the granting of a motion for new trial.

This court has said that a new trial will not be granted
on the ground of newly discovered evidence where it is

simply cumulative and inconclusive or where there has been a want of proper diligence to procure the evidence on the trial. (*Lathrop* v. *People,* 197 Ill. 169; *Henry* v. *People,* 198 id. 162.) We have also stated that newly discovered evidence must appear to be such as would probably change the result if a new trial were granted. (*People* v. *Williams,* 242 Ill. 197.) This last decision stated the requirements that must be complied with in order to justify the granting of a motion for a new trial for newly discovered evidence. These requirements are substantially the same as set forth in Wharton on Criminal Pleading and Practice, (8th ed. sec. 868,) and 20 R. C. L. 290. It has also been stated that when it is shown, on motion for new trial, that there was newly discovered evidence not cumulative in regard to the particular point to which it relates and the importance of which could not have been foreseen, and such newly discovered evidence strengthens the conviction of the court that justice has not been done, a new trial will be granted for further examination of the case. (*Wilder* v. *Greenlee,* 49 Ill. 253; *Cairo and St. Louis Railroad Co.* v. *Schumacker,* 77 id. 583.) "As a general rule, a new trial will not be granted on account of the discovery of facts and circumstances merely cumulative in their character, the reason for which rule is that public policy, looking to the finality of trials, requires that parties be held to diligence in preparing their causes for trial, and it is not, strictly speaking, an independent rule but a mere corollary of the requirement that the newly discovered evidence must be such as to render a different result probable on a re-trial of the case. The rule must, however, be taken in its proper sense, and it is not to be understood as precluding a new trial in every case where the testimony relates to a point contested on the former trial, for if it were so a new trial could seldom, if ever, be granted in any case. The rule, when properly applied, is a salutary guide to the discretion of the court, and where the testimony is strictly cumu-

lative and merely increases the weight of the evidence, leaving the cause still in doubt, or where it is of such a nature that its truth may be conceded without justifying acquittal in the face of other evidence, a new trial will not be granted." (20 R. C. L. 295.)

There is a wide divergence in the authorities as to just what constitutes cumulative evidence. Generally it is held to be additional evidence of the same kind and to the same point. "To render evidence subject to the objection that it is cumulative in the legal sense, it must be cumulative not with respect to the main issue between the parties but on some collateral or subordinate fact bearing on that issue." (20 R. C. L. 298.) See, also, as to what has been held to be cumulative and not cumulative evidence, *Spencer v. State*, 46 L. R. A. (N. S.) 903, and cases cited in note, and also note in L. R. A. 1916C, p. 1162. "It must appear that the newly discovered evidence, if adduced at another trial, would operate to produce a different result." (8 Ency. of Evidence, 997.) The same rule applies to newly discovered evidence in criminal cases as in civil cases, except it is sometimes held that as great an amount of diligence to discover the new evidence is not required in criminal cases. (14 Ency. of Pl. & Pr. 842; 20 R. C. L. 290.)

It is not urged that the rules as to due diligence have not been complied with by plaintiff in error or his counsel, the only real objection made to allowing the motion for a new trial being that this evidence is merely cumulative. There can be no question that it tends strongly to support the testimony of plaintiff in error as to the two men coming to his house with two automobiles,—one of them a runabout and the other a Ford with no license numbers,—and that he was not with them before the machines reached Tolono, where he lived, and was with them as they traveled east from Tolono towards Sidney. In view of the nature of the evidence in this record we think that the ends of justice require that there should be a new trial for

the purpose of permitting the jury to consider this newly discovered evidence in deciding whether or not plaintiff in error was guilty of the crime with which he was charged.

Counsel for the plaintiff in error further argue that the court erred in refusing to give an instruction they requested, to the effect "that if you believe from the evidence in this case that the defendant, Ralph Wright, was so intoxicated on the night that the automobile in question was taken, to-wit, from the hours of ten o'clock in the evening until four o'clock next morning, when the machine was found, that he was incapable of forming an intent to steal, it will be your duty to find the defendant not guilty." There can be no question from this record that plaintiff in error had been drinking heavily during the night of July 12 and morning of July 13, and all the evidence in the record is consistent with his statement that he drank intoxicating liquor with these men at his house and after they went away together in their automobiles. The testimony of those who saw him sleeping in the front seat of the automobile as to what his condition was, how he acted and what he said after he was awakened is also entirely consistent with the theory that he had been drinking heavily during the previous night. The only instruction given on the question of drunkenness was one on behalf of the State, which instructed the jury that the statutes of Illinois provide that "drunkenness shall not be an excuse for any crime or misdemeanor." It has been stated by this court that neither at common law nor under the statute was drunkenness any excuse for crime, except as provided by the statute. "At common law, where it required a particular intent in the doing of an act to constitute crime,—as, for instance, larceny, where the intent to steal must accompany the act of taking,—it is held it may be shown in defense that the party charged was intoxicated to that degree that he was incapable of entertaining the intent to steal, and that he neither then, nor afterwards, yielded it the sanc-

tion of his will." (*Bartholomew* v. *People,* 104 Ill. 601; *Schwabacher* v. *People,* 165 id. 618; *Bruen* v. *People,* 206 id. 417.) While this refused instruction was not as accurately worded as it might have been, and for that reason we might not be disposed to reverse for the refusal to give it if that were the only error, we think the court erred in not giving an instruction setting out substantially the rule as stated in these decisions of this court.

It is further urged in this connection that the court erred in refusing to permit plaintiff in error, while on the stand, to be examined at length as to his former acquaintance and association with the two men who he testified came to his residence in Tolono at three o'clock on the morning of July 13; that while he was permitted to testify that he had met them in a saloon a few days before at Westville and had ridden over with them to Tolono in the automobile he was not permitted to testify that when they came to his house at that time they drank intoxicating liquor; that if he had been allowed to tell the jury this fact and his former association with the men it would not have appeared to the jury so unreasonable that they should come to his house at three in the morning for more liquor. The court seemingly refused to allow the examination on these questions because the alleged meeting with these men was several days before the automobile was stolen. The court should have permitted a most liberal examination as to plaintiff in error's former association with these men. We think the court erred in refusing to allow plaintiff in error to be examined fully on that question.

Other rulings of the court are urged as error by counsel for plaintiff in error, but we deem none of them of sufficient importance to justify separate discussion here.

The judgment of the circuit court will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*