The People of the State of Illinois, Plaintiff-Appellee,
v. Donald Burrington, Defendant-Appellant.

Gen. No. 68–91.

Second District.

November 27, 1968.

George H. Schirmer, Jr., of Freeport, for appellant.

Dexter A. Knowlton, State's Attorney of Stephenson County, of Freeport, for appellee.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant, Donald Burrington, was tried and convicted of the crime of murder of 2-year-old Duane Gerloff in the Circuit Court of Stephenson County and sentenced to the Illinois State Penitentiary for a term of not less than 25 nor more than 35 years. Burrington appealed to the Supreme Court on the grounds that certain state-

ments made by him to the police during the investigation without benefit of counsel were improperly admitted into evidence and the failure of the trial court to grant a new trial on the basis of newly discovered evidence was error. However, Burrington did not argue the first point to the Supreme Court and in accordance with Supreme Court Rule 341(e)(7) it was deemed waived and the cause transferred to this court since no constitutional issue was involved. Burrington has expressly waived his first point before this court and raises here only the denial of his motion for a new trial.

On November 28, 1963, Burrington lived with Mary Gerloff and her four children aged 5, 3, 2 and 6 months in her rented apartment in the City of Freeport. Although they were not married, Burrington and Mrs. Gerloff had lived together for over a year, and the youngest child had been fathered by him. Burrington had discussed marriage with Mary but only on the "condition that she got rid of the kids." He expressed a particular dislike for Duane, age 2 years, because of his physical resemblance to her divorced husband, Ed Gerloff.

Burrington, Mary and the children awoke around 10:00 a. m. on November 28 and ate a chicken dinner at 11:30 a. m. In the afternoon Mary's brother visited the home and observed Duane at play with the other children and testified that he looked "pretty good" and "behaved okay." Mary and her brother went to a laundromat during the afternoon, leaving Duane with Burrington and the other children, and returned about 4:30 p. m. The brother then left and Mary prepared a Thanksgiving dinner that was eaten by her, Burrington and the children about 4:45 p. m. Mary testified that Duane sat in his high chair during the meal and "ate good."

About 7:00 or 7:30 p. m., Duane wet his training pants and Burrington took him to the kitchen where he hit him in the jaw with a wooden paddle. Duane "hollered" and Burrington took him into the bathroom with Mary's old-

est child, 5-year-old Ricky. Prior to that time, Mary testified that Duane had been playing and that his stomach was normal and "flat." Mary changed her baby's diapers and went to the bathroom door but it was locked. Despite her entreaties, Burrington refused to unlock the door for 5 minutes and when she was finally admitted she found Duane sitting on the floor, his head bobbing back and forth in a dazed condition and his stomach "bloated like a balloon" and "hard as a brick." She observed a small plastic hose on the bathroom floor and that Duane's face was wet. Mary immediately called a doctor and with the aid of neighbors took Duane to the hospital. The child died several hours later.

Dr. Gilbert Fish first saw Duane at the hospital at about 9:30 p. m. The child was unconscious, critically ill with multiple bruises over his body and appeared to have severe injures to the brain. There was 1000 ccs. of food and fluid in the child's stomach (about a quart) that caused a severe distention since the normal capacity of a child of 2 years is 200 ccs. It was his opinion that the child died of traumatic shock caused by injury to the abdomen resulting in a ruptured stomach and complicated by brain swelling and damage.

Dr. Francis C. Tucker, a pathologist, performed an autopsy and testified that there was a large bruise on the face and a number of bruises and lesions on the body. His autopsy revealed a 4-inch laceration of the stomach, a laceration of the liver, a pronounced increase of fluid within the brain that could have been caused by a concussion. It was Dr. Tucker's opinion that death was caused by the traumatic effect of the ruptured stomach that created a chemical type of peritonitis. Both Dr. Fish and Dr. Tucker testified that in their opinion the stomach could only be ruptured, even in its abnormal, distended condition, by the impact of a forceful blow from the outside, such as from a fist, a knee, a shoe or other blunt object.

A police officer testified that Burrington told him that he struck the child with a paddle and had fastened the plastic hose to the hot water faucet in the bathroom where he had taken Duane.

With this evidence before it, the jury on January 10, 1964, returned a verdict of guilty of the charge of murder and sentence was imposed on February 7, 1964.

The defendant filed a motion for a new trial based on newly discovered evidence that was supported by an affidavit dated February 3, 1964, and signed by Dr. Fish and Dr. Tucker. In their affidavit, the doctors state:

> "That since their testimony as such witnesses, they have developed through research, an opinion different from that which they had at the time of their testimony, and do now state that a rupture of a severely distended stomach could occur by reason of minimal trauma, so that a severe blow such as by a fist or other blunt object would not necessarily be required to cause such a rupture."

It is contended by the defendant that the trial court improperly denied his motion since the jury could well have concluded that a reasonable doubt of Burrington's guilt existed on the basis of the modification in the expert opinion. He argues that since it was not necessary for a forceful blow to cause the rupture it would have been possible to conclude that the child had fallen, or bumped his stomach or that the rupture was spontaneous.

A motion for a new trial on the basis of newly discovered evidence is not regarded with favor and is subjected to close scrutiny. People v. Dukes, 19 Ill2d 532, 538, 169 NE2d 84; People v. Holtzman, 1 Ill2d 562, 569, 116 NE2d 338. The disposition of the motion is left to the sound discretion of the trial court and that discre-

234

■

tion will not be disturbed without a showing of abuse. People v. Baker, 16 Ill2d 364, 374, 158 NE2d 1. The Baker case repeated the requirements for the motion to lie as follows:

> "To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence."

The rule was also stated in People v. Silvia, 389 Ill 346, 352, 59 NE2d 821, and People v. Marino, 388 Ill 203, 209, 57 NE2d 469.

As far as we can see, the motion has never been allowed or even made in regard to expert testimony. It is clear, however, that the new evidence is not of such conclusive character that it would probably change the result on a retrial. People v. Witherspoon, 36 Ill2d 471, 477, 478, 224 NE2d 259; People v. Dukes, supra, pp 538 and 539. The uncontradicted evidence is that Duane Gerloff was a normal, health child on November 28, immediately prior to his confinement in the bathroom with the defendant. Five minutes later, his stomach was enlarged and extended to five times its normal capacity, he was unconscious, his head was "bobbing" and he was suffering from severe brain damage, a ruptured stomach and a lacerated liver.

■ In view of the expressed hostility of the defendant for this child, the circumstantial evidence that death was caused by his criminal act is overwhelming. That the stomach could have been ruptured by a minimal trauma is pertinent but hardly conclusive. Under the cir-

■■■■■■

cumstances, it is highly improbable that the jury would return any other verdict than that returned.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.