THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JIMMY R. HUGHES, a/k/a JAMES BOLTON, Defendant-Appellant.

(No. 72-67;

Second District—May 8, 1973.

Paul Bradley, of Defender Project, of Elgin, for appellant.

Charles E. Marshall, State's Attorney, of Sycamore, (James W. Jerz, of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Jimmy R. Hughes, a/k/a James Bolton, was convicted of burglary after a jury trial, and sentenced to 3-10 years in the penitentiary. Appealing, he claims error in denying his motion for a new trial based on newly discovered evidence; and contends that he was not proven guilty beyond a reasonable doubt, that he was deprived of a fair trial by the improper admission of evidence of his prior record and prejudicial testimony that he had exercised his right to remain silent, and that his trial counsel was incompetent.

The charged burglary occurred about 9:45 P.M., February 5, 1969, at the Fairdale Grocery Store located on the north side of Route 72 in Fairdale, Illinois. The store adjoined "Club 72", a tavern. Mrs. Roger Littlejohn, who lived across the road from the tavern, testified for the

State that she saw a light colored Chevrolet station wagon pull off Highway 72 and park in front of the tavern. After a few minutes the car backed and re-parked, facing the lean-to on the side of Club 72; then after another few minutes backed in toward the tavern and again parked facing the grocery store. She saw two men leave the car and go to the back of the store. The witness, continuing her narrative, said:

"So I didn't pay very much attention after that until they was a car parking at the tavern, down by the tavern door, and that gentleman come out and come in the car and started it and went down by the store. When this gentleman started the car, evidently there was someone in this parked car, and he flashed the blinkers twice, and that made me wonder what was going on. So I watched then, and after a while I seen a gentleman run from the car to the store,   *   *   *."

Mrs. Littlejohn then called the tavern. She saw two young men go from the tavern toward the store. The witness continued her narrative:

"I went to the window and watched, and in a short time I see this car pull up in front of the car, and one more came out there. One fell on the porch as he come out there. He got up and both got in the car and went east,   *   *   *."

Michael Miskimon, one of the boys who came from the tavern to the grocery store in response to Mrs. Littlejohn's call, testified that he went a couple of feet inside the store, the door of which was open, and saw two men in it. He asked them what they were doing there, upon which the men inside stooped down and "froze". Miskimon returned to the tavern and told the people there to call the police. When he again emerged from the tavern the men were getting into a 1959 or 1960 Chevrolet station wagon which was parked, backed toward the tavern. The boys followed the car, which eluded them by turning off its lights, turning around in a farm yard, and heading back west toward Fairdale. The witness could not accurately describe the men in the store nor identify the defendant.

Ronald Roach, the other boy who responded to Mrs. Littlejohn's call, testified he saw a man in the store and one in the car. He then returned to the tavern. Upon leaving the tavern again, Roach saw a man wearing a black coat with a white or yellow band leave the store and enter the car, which had pulled over in front of it. He identified the car as a 1959 or 1960 greenish-blue and white station wagon with no license plates, and indicated this was the same car he saw at the scene of an accident sometime after it eluded them when he and several others attempted to follow it.

Another witness testified that he was driving west on Route 72 when

he was met by a car which turned its lights off as it passed him. He was able to recognize three silhouettes in the car. He saw the car again when it ran into a tree, and went to summon aid.

There were three occupants of the car, one of whom was injured, one uninjured and one dead. They were taken in an ambulance to the hospital in Rockford. The wrecked car was a 1960 Chevrolet, white over turquoise, four-door station wagon. An officer at the scene removed a title application from the windshield of the car which listed the name of the defendant as the owner of the car. The officer did not see the defendant at the accident scene, but he did see him at the hospital and testified that he saw a dark coat with a white or yellow band on the back hanging on a dividing wall in the emergency room of the hospital. The officer testified that at the hospital the defendant told him the car was his but he had not been driving. There was testimony by other witnesses that the defendant was one of the injured persons picked up at the scene and taken to the hospital. Articles identified as taken from the burglarized premises were found in the station wagon along with a large quantity of beer and beer containers.

Defendant did not testify. The widow of Howard Voyles, the man killed in the accident, testified that she had last seen her husband alive at 5 or 6 P.M., the night of the accident. In her testimony she had accounted for some of the items found in the car, stating that she had given them to her husband. The sister of the defendant testified that the defendant and Voyles had come over to her house about 5:30 on the night of the accident and that she sensed the defendant had been drinking.

After the jury found the defendant guilty of burglary he failed to appear for his scheduled hearing in aggravation and mitigation and his bond was forfeited. After his return defendant's trial counsel withdrew and defendant obtained new counsel who was permitted to file a delayed post-trial motion. In the interval, the trial judge who had heard the case had resigned due to illness and the case was reassigned. Defendant's motion for a new trial based on newly discovered evidence was denied and defendant sentenced.

Defendant first claims that the court erred in denying his motion for a new trial based on newly discovered evidence. The motion alleged that the testimony of his accomplice Dewayne Clark was unavailable at the time of trial. In the hearing on the motion, Clark testified that on the day in question Voyles, the deceased accomplice, along with the defendant and Clark had gotten together around 4:30 or 5:00 o'clock in the afternoon and proceeded to engage in heavy drinking, including consuming a number of cases of beer in the car and stopping in numerous places in Rockford to drink other alcoholic beverages; and that later in

the evening, while still drinking beer, the three drove to DeKalb County with Voyles, the individual killed in the accident, driving. Clark further testified that they stopped at the Fairdale Grocery Store; that he and Voyles got out of the car and burglarized the store; that during this time the defendant had passed out in the rear seat of the car from drinking too much alcohol; and that defendant had in no way participated with Voyles and Clark in burglarizing the store.

In denying the motion, the court referred to the fact that it was shown that Clark was not a fugitive at the time of the trial as had been earlier represented in the post-trial motion, but was either in Winnebago County jail or at the penitentiary in the State of Illinois. From this the court concluded that the witness was available and could have been subpoenaed so that the offered evidence was not newly discovered in point of law.

Defendant argues that Clark's evidence is of such a conclusive character that it would probably change the trial result, that it was material to the issues and not merely cumulative, and that it could not have been discovered prior to trial by the exercise of due diligence because the defendant was led to believe by the State that at the time of trial Clark was a fugitive from justice so that he could not be charged with lack of diligence in securing the testimony at trial. Particularly the defendant points to the fact that the prosecutor stated to the jury at the trial that the third man was a fugitive from justice; that Officer Salemi, who was apparently the chief investigating policeman for the prosecutor, was sitting at counsel table at the time this statement was made; and that Officer Salemi when questioned by the prosecutor with reference to his investigation made no mention of his interrogation of Clark, although it appeared from the police reports that he had talked with Clark prior to trial and knew where he was incarcerated.

■ ■ To award a new trial on the basis of newly discovered evidence, it must be of such conclusive character that it will probably change the result on re-trial, must be material to the issue and not merely cumulative, and must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. The burden is upon the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of diligence. Granting the motion is largely discretionary with the trial court except in case of manifest abuse. (*People v. Holtzman* (1954), 1 Ill.2d 562, 569; *People v. Baker* (1959), 16 Ill.2d 364, 374; *People v. Burrington* (1968), 101 Ill.App.2d 230, 234-235.) These stringent rules are based on public policy which looks to the finality of trials and therefore requires that parties be held to diligence in preparing their cases

for trial. The standards enumerated are not absolute but are guides to the discretion of the trial court. Where the newly discovered evidence is not cumulative and the importance of it could not have been foreseen, and it strengthens the conviction of the court that justice has not been done, a new trial will be granted for further examination of the case. *People v. Wright* (1919), 287 Ill. 580, 586; *People v. Royals* (1934), 356 Ill. 628, 639-640. See also *People v. Upshaw* (1965), 58 Ill.App.2d 256, 260-261; *People v. Pirovolos* (1970), 126 Ill.App.2d 361, 364.

■■ The particular facts and circumstances in the record before us make this an appropriate case to grant a new trial to further the ends of justice. It is uncertain from the record whether the defendant was in the building and therefore chargeable as a perpetrator or whether he was in the car and subject to guilt under accountability principles. The State's theory at trial was the former, although an accountability instruction was given. The only evidence that defendant was in the store was the circumstance of a striped coat identified by one of the witnesses, but which no one testified defendant was wearing at the time of the acccident.

The State responds by arguing on appeal that defendant could be found guilty by accountability because of testimony showing the car was moved and a signal flashed from it in the process of the burglary. However, the testimony of the State's witnesses does not clearly exclude the possibility that one of the men in the store had returned to the car and was the one who signaled and then moved it. Reviewing the case under accountability principles thus also engenders some uncertainty. While we do not thereby conclude that the jury was unable to resolve these uncertainties beyond a reasonable doubt, taking the testimony and the inferences they were permitted to draw therefrom, the case was a close one in our view. Therefore the testimony of Clark that the defendant was in the back of the car completely intoxicated and had no part in the burglary, if believed by a jury, could very probably change the result if a new trial were granted and no additional evidence of guilt were adduced by the State.

■■ The court below did not rule on the motion for a new trial on the basis of the credibility of Clark's testimony. The ruling was on the ground that Clark was either in the county jail or in the penitentiary at the time of the trial and therefore was available to defendant at trial. The judge so ruling was not the judge who heard the case and this fact modifies to a considerable extent the deference usually granted to the trial court when it rules on a motion for a new trial on the basis of newly discovered evidence. The State argues that defendant should have known the importance of Clark's testimony and sought him out and could have done so since Clark was a friend. The argument is unpersuasive for it

ignores the factor of deception involved in the prosecutor's statement that Clark was a fugitive in spite of Salemi's undoubted knowledge that Clark was incarcerated in a different county on another charge at the time the statement was made.

The State also argues, citing *People v. Holtzman* (1954), 1 Ill.2d 562, that the defendant is seeking to present, impermissibly, a new theory of defense as a ground for a new trial. The defense was primarily based on putting the State to its burden of proving that defendant was at the scene of the crime. In his opening statement, defense counsel stated that his client was too intoxicated to remember anything or to form an intent of unlawful entry. The defendant also produced a witness who testified she thought defendant had been drinking the night in question. There was evidence of the considerable amount of beer found in the wrecked auto. These matters indicate the line of defense presented at trial was not inconsistent with Clark's testimony.

There are certain other aspects of the trial which have contributed to our conclusion that this is an appropriate case to grant a new trial. The defense called Officer Salemi as a witness at trial to testify in response to a subpoena to produce certain items taken from defendant's car and to produce original copies of police reports. Salemi produced the items and was questioned about them by defense counsel. On cross-examination the witness was asked what he further did in connection with the investigation of the case. The record shows the following:

"Q. All right. Did you, in fact, attempt to interrogate the subject?

A. Yes, sir.

Q. What happened when you proceeded—

MR. FIERZ: This is irrelevant. It goes beyond the scope of direct examination. I object.

THE COURT: He may answer.

MR. MARSHALL: He was called.

THE COURT: He may answer the question.

A. I advised Jimmy Hughes of his constitutional rights, advising him that he could remain silent when questioned, if he wished to remain silent. *He didn't want to talk to me any further*, so I left it at that.

Q. Then what did you do?

MR. FIERZ: I don't see how this has anything to do with direct examination pertaining to this report.

THE COURT: That is true, but this was an officer involved and on cross examination where the witness has been called in they are not bound by the direct examination if they have other

information which can be brought out. He is not confined to that. This is not a civil case. This is a criminal action. When you produce this witness you open the door to cross examination of any knowledge he might have with reference to the case.

Q. What then did you do?

A. I fingerprinted the defendant, Jimmy Hughes, and sent his fingerprints down to the *Illinois or FBI. Upon receiving the fingerprints back and the record showed a Section 8*, I proceeded to question him again.

MR. FIERZ: There is no evidence of the defendant or his fingerprints. This would be highly prejudicial.

THE COURT: Sustained."

\* \* \*. (Emphasis added.)

We consider with this examination a further fact that the application for a title sticker removed from defendant's car at the scene of the accident by one of the officers was introduced into evidence by the State without objection. The application which was in defendant's name included on the reverse side the handwritten notation:

Howard

Vo                     F.B.I.
                         burglary
                         Ark.
                         1954

Sept. 15, 1943

■■ The comment by the witness on defendant's refusal to speak after being warned of his constitutional right to remain silent constitutes error. (*People v. Lewerenz* (1962), 24 Ill.2d 295, at 299; *People v. McVet* (1972), 7 Ill.App.3d 381, 387, 287 N.E.2d 479, 483, 484.) A somewhat ambiguous reference to a "Section 8" record of the defendant taken in conjunction with the reference to his being fingerprinted and the also somewhat ambiguous reference to the F.B.I. and burglary found on the back of defendant's application for title sticker clearly implied a former record. The defendant did not testify so that he could not be impeached by a record of former convictions. Even though the implication of the former record could be said to have been volunteered by the witness during the cross-examination by the State it was clearly prejudicial. See *People v. Parish* (1972), 6 Ill.App.3d 587, 590; *People v. Kosearas* (1951), 408 Ill. 179, 181.

■■ We cannot declare beyond a reasonable doubt that these trial errors did not contribute to the finding of guilty. We therefore cannot uphold the State's contention that we should consider these errors waived because trial counsel did not adequately preserve his objections

232

in each instance. *Chapman v. California*, 386 U.S. 18, 17 L.Ed.2d 705, 710-711.

The judgment below is reversed and the cause remanded for a new trial in compliance with this opinion.

Reversed and remanded with directions.

GUILD, P. J., and T. MORAN, J., concur.