THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS KNIELING, JR., Defendant-Appellant.

First District (2nd Division)   No. 81—428

Opinion filed November 23, 1982.

HARTMAN, J., concurring in part and dissenting in part.

Phillip J. Zisook, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Peter M. Delongis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant Thomas Knieling was charged by indictment with attempted murder, aggravated battery causing permanent disability, ag-

gravated battery causing permanent disfigurement, aggravated battery using a deadly weapon, aggravated battery causing great bodily harm, and armed violence based on the predicate felony of aggravated battery using a deadly weapon. All the counts of the indictment were based on the May 20, 1980, shooting of the complainant. After a jury trial, defendant was convicted of aggravated battery causing great bodily harm, aggravated battery using a deadly weapon, and armed violence. Judgment was entered on the armed violence conviction only, and defendant received a sentence of 10 years. On appeal, he contends that: (1) the conviction for armed violence must be reversed pursuant to *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627; (2) he was not proved guilty beyond a reasonable doubt because the State's evidence was circumstantial and was not inconsistent with a reasonable hypothesis of innocence; (3) the trial court erred in limiting the testimony of one of defendant's expert witnesses; (4) the trial court erred in failing to instruct the jury on the lesser included offense of reckless conduct on its motion; and (5) the trial court erred in denying defendant's motion for a new trial which was based on affidavits which purport to reveal new evidence.

The evidence presented by the State at trial consisted of the testimony of the complainant and the two police officers who arrived at the scene shortly after complainant was shot. The complainant testified that she and defendant lived together in an apartment in Justice, Illinois. On May 20, 1980, she came home from work at some time after 4 p.m. and began to cook dinner. Defendant was already home from work when she arrived. While she was cooking, she and defendant began to argue about their respective mothers. Blows were exchanged, and defendant ran from the kitchen towards the bedroom. The complainant followed him with a pot of rice in her hand. Defendant reached the bedroom first, said "I've got something for you," and came out of the bedroom holding a .357 Magnum revolver in his right hand while gripping his right wrist with his left hand. Defendant pointed the revolver at the complainant and she turned to flee. She was completely turned around when she was shot in the back. She fell forward on the floor. Defendant knelt down beside her and told her the shooting was an accident. He then made a telephone call for help. The complainant's legs are paralyzed as a result of the injuries she received in the shooting.

Officer Slepicka of the Justice police department arrived at the apartment in response to a radio call. He looked through a window and observed the complainant lying on the floor and defendant lying on top of her. He entered the apartment and ordered defendant to get

away from the complainant and to lie on the floor. Defendant told the officer that the shooting was an accident and that the gun was under the couch. The officer recovered a .357 Magnum from under the couch.

Defendant testified that he was employed as a Cook County Hospital policeman and as a security guard at a bank and that he carried a .357 Magnum while working. On May 20, 1980, he left work at 3:30 p.m. and purchased a quart of beer on the way home. When he arrived home, he poured a glass of beer and took it into the bedroom, where he changed clothes and put his uniform, gun, and holster across the foot of the bed. He woke up when he heard the complainant in the front of the apartment. He got up and went to the kitchen, where the complainant was cooking dinner. The complainant looked at him and asked him what was wrong with his eyes. He told her that he had just woke up. She asked if he had been drinking and he began walking away. The complainant grabbed his arm and he knocked her hand away. He walked to the bedroom and began to put away his uniform. As he picked up his gun, he looked up and saw the complainant in the bedroom doorway. She had a pot in her hand and a startled expression on her face. She turned away and began to run. He started to walk toward the bedroom door to see where she was going. He tripped over a plastic bag filled with laundry that was lying on the floor. He fell forward, striking his arm on the doorway, and the gun went off. He went to where the complainant was lying, told her it was an accident, and called for an ambulance and for the police. When he hung up the phone, Candice Thomas, the upstairs neighbor, entered the apartment. The police arrived shortly thereafter. Defendant stated that the shooting was entirely accidental, and that he had not struck the complainant or told her that he "had something for her."

Candice Thomas testified that she was in her apartment on May 20, 1980, when she heard loud noises coming from the apartment below, followed by what sounded like a shot. She sent her daughter to the downstairs apartment to check on the complainant's children and then she went downstairs herself. She entered the apartment and observed complainant lying on the floor. Thomas obtained the complainant's mother's phone number and called her to inform her that there had been an accident. After she made the call, the police and paramedics arrived. At some point the police asked Thomas how old the complainant was, and she went to the bedroom to look for the complainant's identification. Thomas testified that there was a plastic bag containing laundry on the bedroom floor near the doorway, and that

she pushed the bag out of the way as she entered the room.

Officer Slepicka was called as a rebuttal witness. he testified that Thomas stood near the entrance to the apartment during the time that he was in the apartment, that he did not see her go into the bedroom and that he saw no plastic bag on the floor when he went into the bedroom. Officer Weinberg, who arrived on the scene shortly after Officer Slepicka, testified that he saw no laundry bag in the bedroom, that he did not see Thomas go into the bedroom, and that she left the apartment before he secured the scene of the shooting.

Dr. Enrick Palacio, a radiologist, testified that the two X rays that were received into evidence indicated that the entry wound was on the right side of the complainant's lower back and that the bullet traveled in an upward trajectory in the complainant's body, coming to rest to the left of the spinal column. The defense also attempted to present the testimony of Professor Joseph D. Nicol as to the trajectory of the bullet when it struck the complainant. Professor Nicol is a forensic scientist specializing in criminalistics. The State's objection to the opinion testimony of Professor Nicol was sustained and he was withdrawn as a witness.

Defendant was convicted of aggravated battery using a deadly weapon, aggravated battery causing great bodily harm, and armed violence. Judgment was entered on the armed violence conviction, and this appeal followed.

■ Defendant's first contention on appeal is that his conviction for armed violence based on the predicate felony of aggravated battery using a deadly weapon (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(1)) must be reversed because the conviction constitutes a "double enhancement" of the misdemeanor of battery because of the use of a deadly weapon in the commission of the offense, and therefore the conviction is impermissible under our supreme court's holding in *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.

In *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987, the supreme court, expanding on the language of *Haron*, expressly held that aggravated battery using a deadly weapon can not serve as the predicate felony for a charge of armed violence. In the instant case, as in *Van Winkle*, the defendant was specifically charged with armed violence based on aggravated battery using a deadly weapon. Although the conviction for armed violence could have been presumed to have been based on the conviction for aggravated battery causing great bodily harm had the indictment been silent as to which count of aggravated battery the charge of armed violence was predicated on (see *People v. Ross* (1981), 100 Ill. App. 3d 1033, 1037, 427 N.E.2d

955), no such presumption is available where, as here, the indictment specifies aggravated battery using a deadly weapon as the predicate felony. See *People v. Post* (1982), 109 Ill. App. 3d 482, 486-87.

The State's contention that defendant has waived this issue by failing to raise it in the trial court is meritless. An indictment for armed violence based on aggravated battery using a deadly weapon does not charge an offense. An indictment which does not charge an offense may be challenged at any time and the issue is not waived by a failure to raise it in the trial court. (*People v. Gresham* (1982), 104 Ill. App. 3d 81, 85, 432 N.E.2d 654.) Defendant's conviction for armed violence must be vacated.

■ Defendant next contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence of his intent to harm the complainant was circumstantial and therefore any reasonable hypothesis consistent with innocence must be adopted. The central issue in this case is defendant's intent. Intent is typically proved by circumstantial evidence. (See *People v. Mikota* (1971), 1 Ill. App. 3d 114, 118, 273 N.E.2d 618.) Circumstantial evidence is generally sufficient to support a conviction if it is inconsistent with any reasonable hypothesis of innocence. (*People v. Rhodes* (1981), 85 Ill. 2d 241, 249, 422 N.E.2d 605.) The complainant testified that as she approached the bedroom door she saw defendant pointing the revolver at her while standing with his left hand bracing his right. She then turned to run away and was shot in the back. The complainant's observation of defendant is circumstantial evidence of defendant's intent. The evidence that defendant was standing in a "combat" position while pointing the gun at the complainant is inconsistent with the theory that the shooting was accidental, and is inconsistent with any other reasonable hypothesis of innocence. We find that defendant was proven beyond a reasonable doubt.

■ Defendant's next assignment of error is that Professor Nicol should have been allowed to give opinion testimony as to the trajectory that the bullet was following when it struck complainant. The following hypothetical question was posed to Professor Nicol:

"Assume a bullet is discharged from a .357 Magnum and strikes a twenty-two year old female in the right lower flank or back; assume further that this twenty-two year old female is standing in an upright position with her back towards the muzzle of the weapon when the bullet strikes her; assume further that this bullet lodges with a large fragment to the left of the mid-line posterior to the spinal canal at the level of T-seven and eight and that a smaller fragment is lodged in the spinal canal

itself at about the same level; now, based on these facts do you have an opinion, based on a reasonable degree of scientific certainty, as to what the trajectory of this bullet would have to have been before it entered the back of this twenty-two year old female?''

The State objected to the question, on the basis that the record contained no evidence going to the type or weight of the bullet. The court sustained the objection to the question, noting that the record was also devoid of evidence as to whether the bullet struck a rib or other obstruction after it entered the body.

Our supreme court has addressed the question of the propriety of hypothetical questions to expert witnesses which omit material facts which could have a bearing on the opinion expressed:

"The more expedient and more widely prevailing view is that there is no rule requiring that all material facts be included. The safeguards are that the adversary may on cross-examination supply omitted facts and ask the expert if his opinion would be modified by them, and further that the trial judge if he deems the original question unfair may in his discretion require that the hypothesis be reframed to supply an adequate basis for a helpful answer." *Wirth v. Industrial Com.* (1974), 57 Ill. 2d 475, 480, 312 N.E.2d 593, *quoting* McCormick, Evidence sec. 14, at 34 (2d ed. 1972).

Accordingly, we find that the trial court erred in refusing to allow the expert to answer the question as stated, because the proper procedure in this situation would have been to allow the State to alter the hypothetical on cross-examination. (See *Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 200, 388 N.E.2d 1298.) However, we hold that this error is harmless. The test of whether error is harmless or reversible is whether the reviewing court can say beyond a reasonable doubt that the error at trial did not contribute to the conviction. (See *People v. Smith* (1967), 38 Ill. 2d 13, 17, 230 N.E.2d 188.) In the instant case, defendant had already attempted to prove, through the testimony of Dr. Palacio, that the bullet was following an upward trajectory when it struck complainant. Although Dr. Palacio did state that the bullet followed an upward course through the body, he stated on cross-examination that it was "likely" that complainant had a rib at the point where the bullet entered her body. The colloquy between court and counsel concerning the propriety of the question propounded to Professor Nicol demonstrates that the court and counsel were aware that the hypothetical could be altered so drastically that the original opinion of the expert would be rendered meaningless. We

find that the trial court's refusal to allow this time-consuming process is harmless error where, as here, it is obvious from the record that the expert could not possibly give a persuasive opinion because of the speculative nature of the facts upon which he would have had to base such an opinion.

We also note that the defense theory concerning the trajectory of the bullet was presented to the jury through other testimony and was argued extensively. Defendant had established the possibility that the bullet was traveling in an upward trajectory through Dr. Palacio's testimony that the bullet followed an upward path through the complainant's body. Professor Nicol stated on direct examination that although he had some familiarity with the human anatomy, his knowledge of anatomy fell short of that of a doctor or an anatomist. Dr. Palacio's testimony had already established that the upward trajectory of the bullet after entry did not necessarily reflect the trajectory of the bullet before it entered the complainant's body. Professor Nicol's lack of qualifications to give expert testimony concerning the human body would have made it impossible for him to give more than a vague and speculative opinion concerning the relationship of the trajectory of the bullet after it entered the body to its trajectory before it struck the complainant. We find that the exclusion of such an opinion, while error, is harmless because defendant was not denied his right to fully develop his theory of the case. (See *People v. Moore* (1980), 89 Ill. App. 3d 202, 210, 411 N.E.2d 579.) Dr. Palacio's testimony established that the bullet traveled upward through the body, and Professor Nicol's testimony could not have more fully apprised the jury of the possibility that the bullet was also following an upward path before it struck the complainant.

■ Defendant's next contention is that the trial court erred in failing to give an instruction on the lesser included offense of reckless conduct on its own motion. All the instructions given to the jury were tendered by the State, and defense counsel tendered no instructions and made no objection to the instructions which were given. No error concerning the instructions was raised in defendant's post-trial motion.

Supreme Court Rule 366(b)(2)(i) provides that no party may raise the failure to give an instruction on appeal unless he tendered the instruction at trial. (73 Ill. 2d R. 366(b)(2)(i); see *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513.) We hold that this issue has been waived.

Supreme Court Rule 451(c) (73 Ill. 2d R. 451(c)) authorizes the reviewing court to overlook the waiver of errors in jury instructions if

the interests of justice require. The object of this exception to the waiver rule is to insure that the criminal defendant is not denied his right to a fair and impartial trial. (*People v. Underwood* (1978), 72 Ill. 2d 124, 130, 378 N.E.2d 513.) In the instant case, the defendant was not denied a fair trial by the court's failure to offer an instruction on reckless conduct on its own motion. The entire theory of defendant's case was that the shooting of complainant was an accident which occurred when defendant tripped over a laundry bag. No evidence was offered tending to show that the shooting was a result of reckless conduct. We also note that it is reversible error to instruct the jury on a lesser included offense, and thus permit the jury to reach a compromise verdict, when there is no evidentiary basis for the instruction. (See *People v. Keagle* (1967), 37 Ill. 2d 96, 102, 224 N.E.2d 834.) We hold that defendant was not denied a fair trial by the trial court's failure to give a reckless conduct instruction.

█ Defendant's final contention is that the trial court erred in refusing to grant a new trial based on affidavits submitted to the court with defendant's post-trial motion. The affidavits are from defendant, his father, and Sheila Pamon, a probation officer who knew both defendant and the complainant. Defendant asserts that these affidavits constitute new evidence which requires the granting of a new trial.

Sheila Pamon's affidavits memorialize two telephone conversations that she had with the complainant after defendant's trial, during which complainant stated that she was told by police officers and the State's Attorney that defendant would be sentenced to probation or at the most one year because of the shooting; that she had to testify as she did because she could not continue living with her mother if she did not; that she "heard the policemen lie and she wondered why the attorney did not ask her about these statements"; that had she been asked she would have testified that she did not believe that defendant had intended to hurt her; that if she had been asked to, she would have testified about the presence of the laundry bag in the bedroom; and that she had been told by the Attorney General's office that if defendant was convicted, she would be entitled to a $15,000 award under the Illinois Victim's Act.

Defendant's father's affidavit stated that he received a telephone call from the complainant after the trial of this case in which complainant stated that had she been asked, she would have testified concerning the presence of the laundry bag in the bedroom.

Defendant's affidavit stated that the complainant called him on the telephone prior to trial and said that if he did not give her $5,000,

she would tell lies on the witness stand, and that defendant did not give any sum of money to the complainant.

For a new trial to be granted on the basis of newly discovered evidence, the evidence

"must be of such conclusive character that it will probably change the result on re-trial, must be material to the issue and not merely cumulative, and must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence. The burden is upon the applicant to rebut the presumption that the verdict is correct and to show that there has been no lack of diligence. Granting the motion is largely discretionary with the trial court except in case of manifest abuse." *People v. Hughes* (1973), 11 Ill. App. 3d 224, 228, 296 N.E.2d 643.

We hold that the trial court did not abuse its discretion in denying defendant's motion for a new trial. All of the statements which were alleged to have been made by the complainant after trial concern matters about which she might have been questioned at trial. Although defense counsel asserted at the hearing on the motion that he did not question the complainant on these matters because he did not know what her answers would be, this assertion does not serve to characterize those matters as evidence which could not have been discovered prior to trial. The complainant also could have been impeached at trial with the matter alleged in defendant's affidavit. Nothing in the affidavits conclusively contradicts the factual content of the complainant's testimony, although the matter alleged in the affidavits might impeach the complainant's credibility as a witness. However, evidence which is merely impeaching, as opposed to conclusive, affords no basis for a new trial. *People v. Johnson* (1978), 60 Ill. App. 3d 183, 191, 376 N.E.2d 381; see *People v. McCullough* (1904), 210 Ill. 488, 518, 71 N.E.2d 602.

For the reasons stated herein, the judgment entered on the armed violence conviction is vacated, the aggravated battery convictions all affirmed, and the cause is remanded with directions to impose sentence on the aggravated battery convictions.

Judgment vacated in part; affirmed in part; and remanded with directions.

DOWNING, J., concurs.

JUSTICE HARTMAN, concurring in part and dissenting in part:

I concur with the majority opinion except for that part finding harmless error in the trial court's refusal to allow the testimony of Professor Nicol concerning the hypothetical trajectory of the bullet that struck the victim. I respectfully submit the circuit court committed reversible error when it did not allow the expert witness to answer the hypothetical question posed to him concerning the angle at which the bullet crippling the victim entered her body and I would reverse and remand for a new trial. Defendant contends that the shooting was an unfortunate accident. He testified that the gun accidently discharged as he fell over a plastic bag of laundry when his hand struck the side of the doorway leading out of his bedroom. The question posed sought to establish the angle at which the bullet entered the victim's body because if it had been moving upwards when it struck her, this fact would have supported defendant's testimony that the gun had gone off as he was falling over the bag. If he had aimed the gun and deliberately shot her in the back as the victim suggests, the bullet more probably would have entered her body at the approximate horizontal.

A defendant is entitled to every reasonable opportunity to present evidence which might tend to create reasonable doubt as to his guilt. (*People v. Cole* (1964), 30 Ill. 2d 375, 380, 196 N.E.2d 691.) The testimony which defense counsel had attempted to elicit from the expert in the instant case would have been positive evidence of defendant's innocence, in corroboration with and in support of other defense evidence. Had that evidence been submitted to the jury, it would have had a much more direct bearing on his guilt or innocence than argument of counsel which the jury was instructed to disregard if not based upon the evidence. (People's Instruction No. 3, Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981).) The fact that this theory was argued to the jury, as noted in the majority opinion, is therefore of little solace to the defense. Realistically, this court cannot weigh the effect of such evidence and as the supreme court held in *People v. Watson* (1966), 36 Ill. 2d 228, 232, 221 N.E.2d 645, one who is charged with a crime should be allowed to present a proper defense and, if the evidence offered is competent, it should be permitted to go to the jury for whatever it is worth. This is particularly crucial in the present case where the evidence was close. Had defendant's expert witness been allowed to testify and had the jury believed him, it might very well have accepted defendant's version of events, that the shooting was accidental, caused by his tripping over a plastic bag, which was seen in the bedroom doorway after the shooting by an independent witness, Candice Thomas, a neighbor. See, *e.g., People v.*

*Calhoun* (1972), 4 Ill. App. 3d 683, 281 N.E.2d 363.

The State's contention that this issue was waived when defendant failed to make an offer of proof, relying on *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022, and *Tolefree v. March* (1981), 99 Ill. App. 3d 1011, 425 N.E.2d 1247, *appeal denied* (1981), 85 Ill. 2d 582, is in my opinion without merit. In *Tolefree*, the appellate court held that no offer of proof is necessary where, as here, the evidence sought to be introduced or the questions asked in themselves demonstrate their purpose and materiality. See also *Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 491, 404 N.E.2d 406; *Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 253, 219 N.E.2d 588, *appeal denied* (1967), 35 Ill. 2d 630.

For the foregoing reasons I would reverse and remand for a new trial.