(No. 26890.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH PANCZKO *et al.,* Plaintiffs in Error.

*Opinion filed January 21, 1943.*

Martin O. Weisbrod, and Harry J. Busch, for plaintiffs in error.

George F. Barrett, Attorney General, and Thomas J. Courtney, State's Attorney, (Edward E. Wilson, John T. Gallagher, Melvin S. Rembe, and Julius L. Sherwin, of counsel,) for the People.

Mr. Justice Thompson delivered the opinion of the court:

Joseph Panczko and Walter Jedyenak, hereinafter called the defendants, sued out a writ of error to reverse a judgment entered and sentence imposed by the criminal court of Cook county, on their conviction for burglary. The first count of the indictment charged a forcible breaking and entering and the second charged an entering without force. The property alleged to have been burglarized was "the store and printing plant of Severinghaus, Weiler and Haeger, Inc., a corporation." The breaking and entering was charged as having been done with intent to steal the property of said corporation. The errors relied upon for reversal, which are properly preserved by objections and motions are: (1) that the firm of Severinghaus, Weiler and Haeger, Inc., was not proven a corporation; (2) the proof does not establish an intention to feloniously or burglariously enter the premises involved with the intent to steal property; (3) improper introduction in evidence of People's exhibits 5 to 10, inclusive, by the People; (4) improper conduct of the trial attorney in his cross-examination of the defendants.

The only evidence offered in proof of the corporate existence and ownership of the property burglarized, was the testimony of Louis H. Weiler. When asked the nature of his business or employment, the witness replied: "I am President of the concern, corporation, Severinghaus,—" That answer was stricken on motion and the witness was then asked: "You are President of what firm? Name the firm." To which he answered.: "Severinghaus, Weiler and Haeger, Inc." The next question was, "Is that the—

what is called 'incorporated' by an 'Inc.,' an abbreviation, is that correct?" His answer was, "Inc."

Plaintiffs in error contend this proof is insufficient and invoke the rule that the ownership of the building entered is an essential allegation in an indictment for burglary, and if such ownership is alleged to be in a corporation, the existence of the corporation must be proved. That rule is completely fortified by the decisions of this court. (*People* v. *Pernalsky,* 334 Ill. 38; *People* v. *Smith,* 342 id. 600; *People* v. *Krittenbrink,* 269 id. 244; *People* v. *Struble,* 275 id. 162; *People* v. *Mendelson,* 264 id. 453.) The methods of proving the existence of the corporation are: (1) by introducing the charter of the corporation or a certified copy thereof; or (2) by proving user. If the former method is adopted the latter is unimportant. (*Sykes* v. *People,* 132 Ill. 32.) Proof of user of the corporate franchise is *prima facie* evidence of the corporation's existence. Ill. Rev. Stat. 1941, chap. 38, par. 737, p. 1205; *Waller* v. *People,* 175 Ill. 221; *People* v. *Bernstein,* 304 id. 351; *People* v. *Barnett,* 347 id. 127; *People* v. *Rogers,* 303 id. 578.

Where user is proved, it is sufficient in the absence of countervailing evidence. (*Kossakowski* v. *People,* 177 Ill. 563; *People* v. *Barnett, supra.*) User may be proved by showing that the alleged corporation had an office, operated its business through managers, cashiers and other officers; had a board of directors and president elected by the directors; and such additional acts as manifest corporate functioning. *People* v. *Rogers, supra.*

While the above propositions of law are correct as to the proof of corporate existence, by the introduction of the charter or a certified copy thereof, or by proving user, it has been held that proof of corporate existence may be shown by oral testimony, if not objected to. (*People* v. *Burger,* 259 Ill. 284; *People* v. *Novick,* 265 id. 436.) Proper proof of corporate existence was not made in this case either by introducing the charter of the corporation

or a certified copy thereof or by proving user. The question then arises as to whether or not proof of the corporation was made by oral testimony, no objection to its introduction being interposed.

The evidence reveals that Louis H. Weiler was called as a witness for the People and when asked the nature of his business and employment, he replied: "I am President of the concern, corporation, Severinghaus,—" Objection was made as to, "President of the corporation." The objection was sustained and that part of the answer was stricken on motion and the witness was then asked: "You are President of what firm? Name the firm." And he answered: "Severinghaus, Weiler and Haeger, Inc." No objection was made to this question and answer. When he answered, "Inc.," it had the same effect as though he had answered: "Severinghaus, Weiler and Haeger, a corporation," or "Severinghaus, Weiler and Haeger, incorporated." In answering this question he not only affirmatively stated he was President of the firm, but named the firm adding the abbreviation, "Inc." which could have no other meaning than that it was a corporation and he was its President. To further clarify the abbreviation, "Inc.," the witness was then asked: "Is that the—what is called 'incorporated' by an 'Inc.,' an abbreviation, is that correct?" and his answer was: "Inc." The word "Inc." as given in Webster's International Dictionary, has as a definition, "abbr.—Incorporated." *People* v. *Smith,* 342 Ill. 600.

It is also provided in the Business Corporation Act, (Ill. Rev. Stat. 1941, chap. 32, par. 157.9,) that "the corporate name: (a) Shall contain the word 'corporation,' 'company,' 'incorporated' or 'limited,' or shall end with an abbreviation of one of said words. (b) Shall not contain any word or phrase which indicates or implies that it is organized for any purpose other than a purpose for which corporations may be organized under this act." A penalty is also provided in the Criminal Code, (Ill. Rev. Stat. 1941, chap. 38,

par. 465,) where any company, association, or person puts forth any sign or advertisement and therein assumes for the purpose of soliciting business, a corporate name, not being incorporated.

It is apparent from reading the two above sections of the statute, with reference to the use of a corporate name that the abbreviation of the word, "incorporated," is sufficient to comply with the statute without showing the word, "incorporated," in full.

We feel that this case falls within the rule as announced by this court in the case of *People* v. *Burger, supra,* where, at page 287, this court said: "It is further objected that the record does not show that Marshall Field & Co. is a corporation. Strict proof of the corporation was not attempted, nor was it attempted to make a *prima facie* case, under the Criminal Code, by proof of user. A division superintendent of Marshall Field & Co. was one of the witnesses who testified on behalf of the People. During the course of his examination he was asked, 'Do you know whether or not Marshall Field & Co. is a corporation?' to which he replied, 'It is; yes, sir.' There was no objection to this question or answer, and it is the only proof on this question in the record. This character of proof was not competent, and had the question been objected to it must have been held inadmissible. The proof having been made without objection was sufficient, and it was then unnecessary for the People to make more strict proof of the existence of the corporation." Under this authority proper proof was made that the firm of Severinghaus, Weiler and Haeger, Inc., was a corporation.

The defendants contend that the proof does not establish an intention to feloniously or burglariously enter the premises involved with the intent to steal property and they cite in support of their contention the case of *People* v. *Fontana,* 362 Ill. 200. The facts in the *Fontana case* and in the case before us are entirely different. In the *Fontana*

*case* the only evidence connecting the defendants with the burglary was circumstantial, outside of suspicious circumstances surrounding their discovery on the premises adjacent to the scene where the burglary had been committed. No evidence was produced at the trial to show their connection with or participation in the crime. No person saw them break in or enter without breaking. No person saw them come out. They were not found inside the building nor in the possession of any of the money or goods stolen nor in the possession of any burglar's tools. In the instant case the defendants were not only found inside the place, but had crept up the stairway and hidden themselves in an attempt at concealment when found by the police.

Mattie Ulman, a witness for the People, testified she lived at 825 North Racine avenue; that the printing plant of Severinghaus, Weiler and Haeger, Inc., was downstairs in the building where she resided; that she occupied the third and fourth floors; that the building fronted on Milwaukee avenue and each front has three windows which front on Milwaukee avenue; that in the early morning hours of March 22, 1942, she was at home and heard some plate glass breaking; that she talked to her husband for four or five minutes, then went to her window and saw a police car coming in front of the building; that the police went in the store and after ten or twelve minutes she saw them take two men from the store and place them in the patrol wagon.

Defendants, as an excuse for being in the building, testified they entered for the purpose of answering a call of nature and to rest, being in an intoxicated condition. All of the police officers testified that these men walked as straight as any sober man and the smell of liquor was not on their breaths. From the evidence, no other windows or doors were broken and their entrance must have been made through the broken glass in the door. Defendants admit they entered the building through the door where the glass

was broken but contend that it was broken before they entered. This is very unlikely for the reason after the crash only four or five minutes had elapsed until the police officers arrived and entered the building. There were no other persons in the building when the officers arived except defendants and they were found hiding in the stairway. The officers testified when they entered they found the combination of the safe on the floor, also saw a sledge hammer and wrench in front of the safe; that gloves, a flashlight and a screw driver were found on the stairway. It is hardly reasonable to suppose that anyone else within four or five minutes could have entered this building, taken part of the tools which evidently they had with them, carried them up the stairway and left them at a place where the defendants were found. From the testimony, all doors, windows and places of entrance were closed and no places of exit were shown by the evidence, in the building. The defendants saw no one in the building when they entered and it is inconceivable that persons could break in a door, enter, leave tools scattered around and leave without being seen by the defendants or police officers who entered the building a few minutes after the crash of glass as a result of the window being broken. Defendants offered to pay the police officers money if the officers would let them go and made the further offer of money to say they were found outside instead of inside of the building. This attempt to bribe the officers is highly inconsistent with their pleas of innocence.

This evidence, considered with other testimony offered, if true, could not have resulted otherwise than in a verdict of guilty. If the jury believed the evidence against the defendants produced by the People, it was its duty to find them guilty. It was a duty which devolved solely upon the jury who saw and heard the witnesses and observed their manner of testifying, to determine, under the rules of law given them by the court, the credibility of the wit-

nesses. No complaint is made of any improper instructions and we cannot say the jury was not correct in its findings unless the court erred as it is contended here, by the defendants, in the introduction of People's exhibits 5 to 10, inclusive, over the objection of the defendants and that the conduct of the trial attorney for the People was such as to result in prejudicing the rights of the defendants.

It is urged by defendants that in order to charge them with possession of an exhibit it must be connected with their immediate control. The more remote the control appears, the higher must be the degree of proof connecting defendants with the exhibits; that in view of the defendants' explanation and the physical facts of the case, it is respectfully submitted that the exhibits found in front of the safe cannot be charged to the possession of the defendants, who were found in a place remote from them; that the same is true regarding the gloves, screw driver and plastic flashlight found on the stairs where, a short time before, the defendants had been found. Defendants again cite the case of *People* v. *Fontana, supra,* in support of their proposition that it was error to allow the People to introduce in evidence People's exhibits 5 to 10, inclusive, which were the burglar's tools found in the premises at the time of the arrest of the defendants. As we have heretofore stated, the facts in the *Fontana case* are different from the facts in the present case. In the *Fontana case,* the defendant was not apprehended in the building where the alleged burglar tools were located while, in the case before us, the defendants were not only found in the building, but many other circumstances proved they were the perpetrators of the offense and hence all tools used in the perpetration of the offense were properly introduced in evidence.

Where the evidence is circumstantial and there is no evidence in the record connecting the accused with the crime charged, exhibits found at the scene of the crime or in the neighborhood of the home of the accused are not

admissible in evidence, but where there is an abundance of closely connected circumstances having some tendency to show possession of a particular exhibit by the defendants at the time of the commission of the crime, the exhibit is admissible in evidence. *People* v. *Fitzpatrick,* 359 Ill. 363.

We believe, in this case, the evidence shows an abundance of closely connected circumstances having a tendency to show possession of the exhibits by the defendants at the time of the commission of the crime and therefore the exhibits are admissible in evidence.

It is urged by the defendants that the conduct of the trial attorney for the People was highly inflammatory and resulted in prejudicing the rights of the defendants with the jury. Objections were made to his method of cross-examination, and were sustained by the court. At one time the court in sustaining an objection said: "But there has been too much of this. The jury will disregard the State's Attorney's remarks." The court was entirely correct in sustaining the objections made by counsel for the defendants. The manner of cross-examination on the part of the trial attorney for the State was wrong and it might, in a close case on the facts, require reversal. This is not such a case. The evidence strongly supports the verdict and we cannot say that the jury was in any way influenced by the improper cross-examination. The defendants have been legally convicted.

The advisory opinion or recommendation incorporated in the judgments of the court sentencing the defendants to the penitentiary is unconstitutional and void. (*People* v. *Montana,* 380 Ill. 596.) The judgment is therefore reversed and the cause remanded to the criminal court with directions to enter a proper sentence.

*Reversed and remanded, with directions.*