(No. 32895.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDDIE HOLTZMAN, Plaintiff in Error.

*Opinion filed November 18, 1953—Rehearing denied Jan. 18, 1954.*

564

Lawrence Swinyer, and A. M. Fitzgerald, both of Springfield, for plaintiff in error.

Latham Castle, Attorney General, and George P. Coutrakon, State's Attorney, both of Springfield, (Robert B. Oxtoby, Raymond L. Terrell, George B. Gillespie, and Fred G. Leach, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Plaintiff in error, Eddie Holtzman, hereinafter referred to as defendant, was convicted by a jury of receiving stolen property, and was sentenced to not less than one year nor more than ten years' imprisonment in the penitentiary by the circuit court of Sangamon County. By this writ of error, he now seeks to have that judgment reversed.

The record discloses that Arthur Reynolds, a witness for the People, testified that seven shirts were stolen by him from W. T. Grant Company on April 1, 1952, and

that he sold them to the defendant, Eddie Holtzman, at Holtzman's place of business in Springfield, for $1.00 each. He testified that he saw Holtzman mark the figures $2.98 on the labels of the shirts, and that he had previously sold articles of clothing to Holtzman; that he had been indicted for grand larceny on March 11, 1952, and had talked to Eddie Holtzman about being under indictment some two weeks prior to the sale of the shirts on April 1. He further testified that in the latter part of November, 1952, Holtzman told him that it would be best for all if he left town before the trial came up. He identified the shirts at the trial as People's exhibits 1 through 7.

Hiebert Hanson, a witness for the People, testified that he was manager of the W. T. Grant Company store in Springfield, on April 1, 1952. He identified People's exhibits 1 through 7 as property of the W. T. Grant Company by the "Pennliegh" label, which was the registered trademark of the company. He testified that the gummed label on the collar, marked $2.98, was not on the shirts at the time they were owned by the W. T. Grant Company. He had no way of knowing that the particular shirts were in the Springfield store, but shirts of the same pattern had been handled by the store. He placed a value on the seven shirts at between $20 and $21. He testified that the W. T. Grant Company is a corporation with a registered agent at 222 W. Adams St., Chicago, Illinois.

Detective Sergeant Virgil Lester Harvel testified that the defendant ran a new-and-used clothing store in the city of Springfield, and that on the morning of May 3, 1952, he took the defendant to the office of the State's Attorney where the defendant stated that he had purchased six or seven shirts from Arthur Reynolds. Later, when asked if they could search his place, defendant said that he had the shirts at one time but sold them, but that he was willing for the officers to make a search. Sergeant Harvel and James McIntyre, a policeman, accompanied

the defendant to the Holtzman store on the same day. When they asked defendant where he kept the shirts, he pointed to the east side of the room, and after looking around there a little they asked him what was kept on the west side, to which the defendant answered, "Nothing." The witness testified that while he was looking around the west side of the room, Holtzman said that he had another box of shirts which he handed to the witness, and which were the shirts later introduced in the trial as People's exhibits 1 through 7, and were the same shirts that Arthur Reynolds identified at the police station as the shirts he stole from Grant's and sold to the defendant. Although defendant was present when Reynolds made this identification, he failed to comment on it at that time.

James McIntyre substantiated the testimony of Harvel, except that he testified that officer Harvel found the shirts after Holtzman had stated that there were no shirts on that side of the store.

The accused did not take the stand in his own behalf, nor were any witnesses called by him. After the verdict of the jury was returned, defendant was given leave to file a written motion for a new trial. During the interim, counsel who had represented defendant during the trial was given leave to withdraw, and a successor entered his appearance. The new counsel, who represents the defendant before this court, filed a motion for a new trial in which he made numerous assignments of error. Three of the points made in the motion, which are now before this court, have to do with the question of new or additional evidence.

The motion for new trial, which was in part supported by the affidavits of five persons, alleged that the affiants knew certain facts and were prepared to testify in behalf of the defendant, that the failure of his attorney to call the affiants as witnesses deprived defendant of a fair opportunity to present fully and completely his defense, and that he was unduly prejudiced at the trial by the failure of his

counsel to call them as witnesses. It is apparent on the face of the affidavits that the evidence which these witnesses might testify to clearly does not come under the category of newly discovered evidence. The trial court took judicial notice of the fact that the trial counsel for the defendant was a practicing attorney at the bar of Sangamon County for more than twenty years, and during such time in the past had been a public defender of Sangamon County. The trial counsel was one of defendant's own choosing, and a court of review will not, upon the change of counsel, consider the incompetency of his former counsel as a basis for reversal. *People* v. *Hicks,* 362 Ill. 238; *People* v. *Zwienczak,* 338 Ill. 237; *People* v. *Ney,* 349 Ill. 172.

Additional affidavits by Luther Braizer and T. Jonathan Jackson were also filed in support of the motion for new trial. These affidavits recited that subsequent to the conviction of the defendant, Arthur Reynolds met them in a tavern in Springfield, and in response to a question by Braizer stated that he did not steal seven shirts at one time but stole two shirts at a time on different days and sold them to Holtzman two at a time on different days, and when asked why he had testified that he had stolen and sold all seven shirts at one time he replied that he lied because he had the defendant where he wanted him, and that the defendant could have shut him up by giving Reynolds what he wanted so that he would not have lied about Holtzman.

It is contended by counsel for the defendant that this was material, competent, noncumulative and convincing testimony of competent witnesses discovered by the defendant after the trial. He argues that, if the contents of the affidavits are true, the offense committed by the defendant would be that of buying goods and property not exceeding the value of $15, and that the maximum punishment fixed by the statute is a fine not exceeding $1000 and confinement in the county jail for a term not exceeding one year.

A distinction is to be drawn between evidence which impeaches a witness in the sense that it affects the credibility of the witness, and evidence which is probative in that it presents a state of facts which differs from that to which the witness testified. Newly discovered evidence, the effect of which is to discredit, contradict and impeach a witness, does not afford a basis for the granting of a new trial. If, however, it contradicts a witness by showing facts, a new trial may be ordered when it appears that such new evidence has sufficient probative force or weight to produce a result different from that obtained at the trial which has been had. While the evidence set forth in the affidavit tended to support a different offense than that committed by the defendant, these facts, if true, were well known to the defendant at the time the offense was committed, and he had every opportunity to defend himself on the basis of the lesser included offense.

We are, therefore, of the opinion that the sole effect of the affidavits of Braizer and Jackson was to impeach the testimony of the witness Reynolds, and this was not a sufficient basis for the granting of a new trial. (*People* v. *Johnson,* 286 Ill. 108.) This rule has not been modified by the case of *People* v. *Cotell,* 298 Ill. 207, as contended by counsel for the defendant. In the *Cotell case* the affidavits for new trial set forth facts which were newly discovered, which impeached the testimony of the accomplice Anderson, which were peculiarly susceptible of the most positive verification by the People, and which, if true, virtually destroyed her entire testimony. The affidavits in that case contain offers of proof to prove that Anderson's residence during certain periods of time was not as she had testified, that she had previously stood trial on charges of larceny wherein she defended on the grounds that a man had induced her to take his property, that bank records showed the disposition of funds received by her in the offense to be such that the defendant could not have re-

ceived any of the fruits of the crime as claimed by her testimony, and that a phonograph supposed to have been given her by defendant and purchased by him from the Lyon & Healy Company had been purchased by her personally from another store. These are facts which go further than impeachment, and, as we said in the *Cotell case,* go to the foundation of the People's case.

Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and to show there has been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse. (*People* v. *LeMorte,* 289 Ill. 11.) We find no such abuse in the instant case.

Defendant, in his motion for a new trial, sought to further impeach the testimony of Reynolds by offering to prove that the samples of handwriting, on the labels of People's exhibits 1 through 7, inclusive, were not the true and valid handwriting of the defendant. He contends that it is obvious, from the comparison of the handwriting on the labels of People's exhibits 1 through 7, inclusive, with the handwriting of Eddie Holtzman on the petition to suppress evidence and the motion for a new trial, that said Eddie Holtzman could not have written the figures $2.98 on the labels which Arthur Reynolds had testified that he saw him do.

This, like the evidence contained in the five affidavits referred to above, does not come under the heading of "newly discovered" evidence, and, like the evidence offered in the affidavits of Braizer and Jackson, is evidence solely

tending to impeach the testimony of the witness for the People. Under a plea of not guilty, the defendant may make as many and different defenses to a charge as he may see fit, but if he proceeds to trial upon a certain line of defense without making an inquiry and preparation as to any other defense that he may have to the charge, the court cannot permit him, after the issue has gone against him, to thereafter come in and upon a motion for a new trial suggest for the first time that there is other evidence material to his defense upon a new and different theory. He cannot divide his defense and present it to the court piecemeal. If he were permitted to pursue one line of defense without inquiry as to any other until the issue had gone against him upon that line, and then, for the first time, inquire as to another defense and be granted a new trial upon the ground that it was newly discovered, there would be no end of litigation. *People* v. *Johnson,* 298 Ill. 52.

Holtzman maintains that the People failed to prove beyond a reasonable doubt that the defendant had intended to convert the property to his own use and deprive the lawful owner of the possession thereof, and had a guilty knowledge that the property was stolen. To sustain a conviction of receiving stolen property, the proof must show (1) that the property has, in fact, been stolen by a person other than one charged with receiving it; (2) that the one charged with receiving it has actually received the property stolen or aided in concealing it; (3) that the receiver knew the property was stolen at the time of receiving it; and (4) that he received the property for his own gain and to prevent the owner from again possessing it. (*People* v. *Piszczek,* 404 Ill. 465; *People* v. *Harris,* 394 Ill. 325; *People* v. *Grizzle,* 381 Ill. 278.) The element of guilty knowledge on the part of the receiver must be proved, beyond a reasonable doubt, to be present at the time the goods were received by him. *People* v. *Rubin,* 361 Ill. 311; *People* v. *Prall,* 314 Ill. 518.

Although proof of actual or direct knowledge that the accused knew the goods had been stolen when he received them is not required, facts and circumstances must be proved sufficient to create in the mind of the accused a belief that the goods were stolen. (*People* v. *Kohn,* 290 Ill. 410; *People* v. *Grove,* 284 Ill. 429.) Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen and by the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was received. (*People* v. *Piszczek,* 404 Ill. 465; *People* v. *Lipiano,* 358 Ill. 475.) Numerous circumstances may be shown. Among them are that the purchase was for much less than the real value; that the defendant denied that the property was in his possession, or concealed it; his failure to make reasonable explanation; or the evil reputation of the person from whom he purchased or received it. The knowledge of the theft need not be that actual or positive knowledge which one acquires by personal observation of the fact. It is sufficient if the circumstances accompanying the transaction were such as to make the prisoner believe the goods had been stolen. *Huggins* v. *People,* 135 Ill. 243.

In the instant case, the record discloses that the defendant purchased the shirts for $1 apiece, and promptly marked them for sale at $2.98, that they were not placed in with his regular stock of shirts on the shelves of the store but were kept in another part of the store. The record also discloses that defendant knew at the time of the purchase that Reynolds was under indictment for grand larceny. None of these facts were disputed in the trial, and we are of the opinion that they constitute evidence sufficient for the jury to find that the defendant had the necessary guilty knowledge.

Defendant further contends that the People failed to prove the existence of corporate powers and functions to

establish by *prima facie* evidence the corporate existence of the owner of the stolen property, alleged to have been received by the defendant. If such ownership is alleged to be in a corporation, then the existence of the corporation must be proved. (*People* v. *Panczko,* 381 Ill. 625; *People* v. *Pernalsky,* 334 Ill. 38.) The methods of proving the existence of a corporation are: (1) by introducing the charter of the corporation or a certified copy thereof, or (2) by proving user, (Ill. Rev. Stat. 1951, chap. 38, par. 737; *People* v. *Panczko,* 381 Ill. 625,) and where user is proved, it is sufficient in the absence of countervailing evidence. While the above propositions of law are correct as to the proof of corporate existence, by the introduction of the charter or certified copy thereof, or by proving user, it has been held that proof of corporate existence may be shown by oral testimony if not objected to. *People* v. *Panczko,* 381 Ill. 625; *People* v. *Burger,* 259 Ill. 284; *People* v. *Novick,* 265 Ill. 436.

An examination of the record discloses that the witness Hanson testified that the W. T. Grant Company is a corporation and was a corporation on April 1, 1952, that he knew the president of the corporation, that its registered agent in Illinois is at 222 W. Adams Street, Chicago. This testimony, which stands unrebutted and was given without objection, falls within the rule enunciated in *People* v. *Burger,* 259 Ill. 284, where we said: "It is further objected that the record does not show that Marshall Field & Co. is a corporation. Strict proof of the corporation was not attempted, nor was it attempted to make a *prima facie* case, under the Criminal Code, by proof of user. A division superintendent of Marshall Field & Co. was one of the witnesses who testified on behalf of the People. During the course of his examination he was asked, 'Do you know whether or not Marshall Field & Co. is a corporation?' to which he replied, 'It is; yes, sir.' There was no objec-

tion to this question or answer, and it is the only proof of this question in the record. This character of proof was not competent, and had the question been objected to it must have been held inadmissible. The proof having been made without objection was sufficient, and it was then unnecessary for the People to make more strict proof of the existence of the corporation."

Further examination of Hanson's testimony shows that People's exhibits 1 through 7, inclusive, each contained the "Pennliegh" label, and that "Pennliegh" is a trademark registered name held by the W. T. Grant Company, which sells these shirts exclusively at retail in many stores, and that the shirts were similar in pattern to other shirts owned and sold by the W. T. Grant Company. These facts, coupled with the testimony of Reynolds that he stole the shirts from the Grant company, are deemed sufficient to prove the ownership in the W. T. Grant Company.

We have carefully examined the entire record in this case, always keeping in mind the rule of law that the uncorroborated testimony of an accomplice must be received only with the greatest caution in aid of defendant's general contention that the evidence is insufficient to support a guilty verdict, and we find sufficient corroboration in the testimony of Hanson and the arresting officers to warrant the judgment of conviction. The defendant had a trial by jury, and for reasons unknown to us elected not to introduce any evidence in his own behalf. We cannot permit him, after the issue has gone against him, to thereafter come in and upon motion for new trial suggest for the first time that there is other evidence material to his defense upon a new and different theory. We are of the opinion that the judgment of the circuit court of Sangamon County was correct and it is therefore affirmed.

*Judgment affirmed.*