THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELMER PRUITT, JR., Defendant-Appellant.

(No. 72-219;

Second District—January 28, 1974.

*Rehearing denied February 27, 1974.*

Julius Lucius Echeles, Carolyn Jaffee and Frederick F. Cohn, all of Chicago, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin Moltz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant, Elmer Pruitt, Jr., being granted a severance from his co-defendant, Raymond Fuller, was convicted of armed robbery after a jury trial and was sentenced to 5-15 years in the penitentiary.

Defendant raises the following issues on appeal:

(1) Did the trial court err in denying defendant's motion for a new trial based on newly discovered evidence?

(2) Did the trial court improperly limit defendant's counsel's examination of the complaining witness?

(3) Was the witness, Fredrick Aubey, qualified to testify as an expert?

(4) Should physical evidence introduced at trial have been excluded because, he alleges,

    (a) the evidence was seized pursuant to an illegal arrest;

    (b) the evidence was retained by the police in violation of Ill. Rev. Stat. 1971, ch. 38, sec. 108—2;

    (c) the chain of possession was not proven at trial.

    (d) the evidence was irrelevant as it was not connected to the defendant?

(5) Did the trial court err in refusing to give the optional portion of I.P.I. Criminal 3.02 instruction concerning circumstantial evidence?

(6) Was defendant proven guilty beyond a reasonable doubt?

The defendant allegedly robbed the Minit-Mart Grocery store in New Milford, Illinois. At approximately 9:15 P.M. on November 24, 1971, two men armed with revolvers, wearing gloves and disguised with false black beards, entered the grocery store and demanded money from the owner, William M. Rader. Rader put approximately $500 in a bag and the two men left with the money in a light colored 1960 four door Oldsmobile. Rader then called the Sheriff's Department.

After receiving a radio message concerning the robbery, Deputy Sheriff Billy Gene Burgess spotted a car which fit the description of the car used in the robbery. Burgess put on his squad car's red light in an attempt to pull over the other car but the driver refused to stop and took off at a high rate of speed. Burgess pursued the Oldsmobile in his own car until the Oldsmobile collided with another car. Thereupon, three men emerged from the Oldsmobile and attempted to escape on foot. After an extensive chase on foot, Officer Burgess caught one of the men, Raymond Fuller.

Detectives Otto Belter and Harry Dermody of the Rockford police department also received a radio message concerning the robbery. In addition, they received another message stating a chase was in progress. A block and a half away from the car crash the detectives observed the defendant walking north on Central Avenue away from the scene of the crash. When the detectives stopped the defendant, he showed them his driver's license as identification. The detectives observed that the de-

fendant seemed nervous and out of breath, but not drunk. He had mud on his shoes, on his right knee of his trousers, and on his right hip pocket. The detectives asked the defendant where he was going and he answered that he was going home. When the detectives then asked why he was walking in the wrong direction, he said he was lost. Defendant then volunteered that he had arrived in the area by automobile and had been left there by the driver after they had had a fight. He could not describe either the car or the driver.

Detective Belter then walked to the accident scene to investigate while defendant remained in the custody of Detective Dermody. After Belter talked to Officer Burgess about the defendant, Detective Dermody gave the defendant his *Miranda* rights and the defendant was then taken to the Detective Bureau in the Court House.

Detective Richard Alan Meyers of the Winnebago County Sheriff's Department, who was also at the scene of the accident, looked inside the 1960 Oldsmobile and observed a .38 caliber revolver with brown handles, and the bottom part of a beard or wig.

A search of the area by Detective Meyers and Maborne produced a holster and a .22 caliber Rome pistol with white grips. Later, a ten-year-old boy also discovered another revolver in the area and turned it over to the police. Another search of the area by a detective and the boy produced two bullets.

The Oldsmobile was impounded at the court house. A search of the car revealed the bag contained $354.90 in cash and $44.05 in checks identified by the proprietor as checks received by him in the store, a goatee type beard and moustache, a false moustache, a pair of glasses with a rubber nose, three wigs, and a .38 caliber revolver.

At the Detective Bureau defendant surrendered some of his clothing. Additionally, the police combed out glass and paint particles from the defendant's hair using the defendant's comb. Fuller and defendant were placed in a line-up. The store owner Rader identified Fuller as having been in his store approximately ten to fifteen minutes before the robbery, and identified the defendant as resembling one robber because of the stern appearance of his eyes. Rader, however, was unable to make a positive identification of either robber.

Because of Rader's inability to make a positive identification, the defendant was released. The police kept defendant's clothing and the particles from defendant's hair. Laboratory analysis of these things revealed that the glass particles taken from the defendant's hair and clothing matched both the safety glass of the Oldsmobile and the glass particles taken from Fuller's hair. The paint particles taken from the defendant's person and clothing matched the paint from the car struck by the Olds-

mobile. Finally, fibers taken from the defendant's clothing matched the fibers of the false beard and moustache found in the Oldsmobile. Defendant was then re-arrested.

At trial, the defendant reiterated the story he had told the police. He had been drinking with someone whose name he did not know. On the way from one bar to another the two had an argument and a fight ensued. He was knocked down and the other man left in a Chevrolet.

After the verdict of guilty but before sentencing, defendant claimed that he had finally located the man whom he was with the night of the robbery. Defendant filed a motion for a new trial based on newly discovered evidence. The motion was supported by a transcribed statement in affidavit from the man, John Seabolt. The statement corroborated defendant's testimony. Seabolt stated that he had not come forward earlier because he was fearful of being charged with assault for his fight with defendant, and because he did not know of the robbery charge against the defendant until after trial. He was finally located by a chance encounter with the defendant's brother during a pool game. He so testified at the hearing on the motion for a new trial. The motion, however, was denied.

Defendant now argues that the trial court should have granted his motion for a new trial based on Seabolt's testimony. The State characterizes Seabolt's testimony as merely cumulative of the defendant's testimony and merely impeaching Rader's testimony, and argues that cumulative and impeaching evidence is never enough to warrant granting a new trial.

■■ Cumulative evidence may be enough to warrant granting a new trial, if the evidence is conclusive in nature necessarily leading to a change in the result. (*People v. Grady* (1942), 381 Ill. 224, 44 N.E.2d 880.) Likewise, newly discovered evidence which would impeach a witness who had testified at trial may be enough to warrant granting a new trial if such evidence not only impeaches "but is of such affirmative character as could probably produce a different result on a new trial." (*People v. Moore* (1972), 6 Ill.App.3d 568, 570, 286 N.E.2d 6, 7.) However, in *People v. Reese* (1973), 54 Ill.2d 51, 59, 294 N.E.2d 288, 292, the Illinois Supreme Court stated:

> "* * * 'Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the pre-

sumption that the verdict is correct and to show there had been no lack of diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in case of manifest abuse.' *People v. Holtzman,* 1 Ill.2d 562, 569, 116 N.E.2d 338, 342."

■■ After a careful examination of the record we find that the trial court did not manifestly abuse its discretion in denying defendant's motion for a new trial. Seabolt's testimony is not of such character as would probably produce a different result at a subsequent trial in light of all the testimony and evidence introduced at trial. This case is most closely analogous to *People v. Harrison* (1935), 359 Ill. 295 at 300, 194 N.E. 518. In *Harrison* the Illinois Supreme Court affirmed the trial court's denial of a motion for a new trial based on newly discovered evidence. The new evidence in that case consisted of the testimony of two persons which allegedly corroborated defendant's alibi and conflicted with the testimony of the complaining witness and several of the other State witnesses. In the case before us, Seabolt's testimony is essentially the same as the newly discovered evidence in *Harrison*. It would only tend to corroborate defendant's alibi and conflict with the testimony and evidence given at trial.

The cases which allowed a new trial based on newly discovered evidence cited by the defendant are not analogous to the case before us. In *People v. Upshaw* (1965), 58 Ill.App.2d 256, 207 N.E.2d 728, and *People v. Pirovolos* (1970), 126 Ill.App.2d 361, 261 N.E.2d 701, there was no dispute between the State and the defendant that the witnesses, who had not been located until after trial, had seen the criminal act and could testify as to what had transpired and positively identify the real culprit.

In the case before us there is a substantial question, and it is open to dispute, as to whether Seabolt was actually with the defendant at the time of the robbery and could accurately testify as to what had transpired.

The case of *People v. Moore, supra,* cited by defendant is not applicable herein. In *Moore,* the State's psychiatrist testified at trial that the defendant was sane. Prior to sentencing the defendant produced a report from the same psychiatrist in which he stated in substance that the defendant was not sane and not able to appreciate the results of his actions. The court there held that this impeaching testimony of the State's psychiatrist would probably produce a different result in a new trial and reversed.

Defendant next contends that he was denied a fair trial by improper limitation of the cross examination of the only witness who testified to

the robbery. Defendant's trial counsel attempted to impeach Rader, the robbery victim, with prior inconsistent statements made by him at the preliminary hearing. At the time of the trial no transcript of the preliminary hearing was immediately available. The defendant argues that the trial court ruled that the defense counsel could not lay a foundation for impeachment with prior statements, except by reading verbatim the prior questions and answers. Citing *People v. Irish* (1966), 77 Ill.App.2d 67, 222 N.E.2d 114, and *People v. Dixon* (1963), 28 Ill.2d 122, 190 N.E.2d 793, defendant contends that the trial court's ruling constituted reversible error. The trial court, however, did not rule that the defendant's counsel must read verbatim the prior questions and answers under every circumstance. In the cross-examination of the complaining witness, the record discloses the following:

"Q. Do you recall testifying at a preliminary hearing in this case?

A. Yes, I do.

Q. Do you recall stating at that time the individual was at least as tall as you were?

A. Well—

MR. DOYLE: (Interposing) I will object, unless he states the question and the answer.

THE COURT: Yes, if you have the question and the answer, it has to be asked in that manner, was this question asked and did you give this answer.

MR. ELLSWORTH: I understand, your Honor. I will withdraw the question."

As seen from the above colloquy, the trial court only stated the defendant's counsel must read verbatim prior questions and answers only if a record of these questions and answers were available to counsel.

■■ The defendant next contends that his constitutional privilege against self incrimination was violated when the testimony of the arresting officer inferred that he chose to remain silent after he had been given his *Miranda* warnings as required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. Examination of the record discloses the following relative to this issue in the direct examination of Officer Dermody:

"A. He stated that the County would like to talk to Mr. Pruitt at the Sheriff's Department. At this time I advised Mr. Pruitt of his Constitutional Rights from my rights card in our squad car, and asked him to come to the County Sheriff's Department with us.

Q. What rights did you advise him of?

A. May I read it from my card?

Q. Is that the same card you used to advise him?

A. Yes. You have the right to remain silent. Anything you say can and will be used against you in a court of law.

You have the right to talk to a lawyer right now and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be furnished to you before any questioning, if you wish one.

And then he was asked do you understand each of these rights that I have explained to you, and he stated that he did.

Q. Did you attempt to interview him any further at that time?

A. No, we did not. He was transported to the County and turned over to the County Detectives at that time."

It is expressly to be noted that the record does not disclose any comment as to defendant's silence after being advised of his rights. More important, however, is the fact that no objection was made at the trial to the admission of the officer's testimony as to his reading of the *Miranda* rights. This question was presented in two recent Supreme Court cases, *People v. Newbury* (1972), 53 Ill.2d 228, 238, 290 N.E.2d 592; *People v. Linus* (1971), 48 Ill.2d 349, 355, 270 N.E.2d 12. In both cases the Supreme Court ruled that where there was no objection to the admission of testimony concerning defendant's silence after being given his *Miranda* rights in the trial court, this issue could not be raised on appeal. Defendant, however, contends that while no objection was made as to the above testimony that we should consider the same under the "plain error" doctrine. (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a).) Counsel for the defendant recently raised the same argument in *People v. Mitchell* (1973), 12 Ill.App.3d 960, 299 N.E.2d 472, 475. The Appellate Court there held that the "plain error" rule was not applicable as "* * * defendant's desire not to respond to police questioning was very brief and not emphasized by the prosecution * * *." We do not believe that in the case before us the "plain error" rule applies. All the officer testified to was a fact that occurred at the arrest of the defendant, and that was that he advised the defendant of his rights under the *Miranda* rule. The testimony did not raise the inference that the defendant chose to remain silent. See *People v. Lucien* (1973 Abst.), 14 Ill.App.3d 289, 302 N.E.2d 371.

We turn next to the contention of the defendant that the qualifications of the expert witness, Fredrick Aubey, were not properly established. Aubey who testified in regard to his miscroscopic examination of certain fibers, is the Crime Laboratory Analyst of the Illinois Department of Law

Enforcement in charge of the Rockford Branch Laboratory. He has a bachelor's degree in natural science, did a year of graduate work in biology, did two and one-half years of medical research at a medical school and did on-the-job training at Illinois State Criminal Laboratory at Joliet. Aubey's training in miscroscopy began during his freshman year in college. Aubey has had training in the examination of hair and fibers and has made hair and fiber comparisons in the past.

■■ Generally, an expert witness is qualified if because of his skill, training or experience he is better able to form a more accurate opinion as to the matters under consideration than the ordinary person. (*City of Chicago v. McNally* (1907), 227 Ill. 14, 81 N.E. 23; *People v. Fiorita* (1930), 339 Ill. 78, 170 N.E. 690.) The test of qualifications, however, is a relative one which depends upon the matter under consideration and the fitness of the witness. (*Mahlstedt v. Ideal Lighting Co.* (1915), 271 Ill. 154, 110 N.E. 795; *People v. Fiorita, supra.*) The determination of whether a witness is qualified to testify as an expert lies within the discretion of the trial court. *People v. Speck* (1968), 41 Ill.2d 177, 242 N.E.2d 208; *People v. Fiorita, supra.*

We find that Aubey's skill, training and experience qualifies him to be an expert in the area of miscroscopic examination and comparison of hair and fibers. The trial court did not abuse its discretion in permitting Aubey to testify as to the result of his miscroscopic examinations.

Defendant next argues that the warrantless arrest of the defendant was unconstitutional because the arrest was based upon "mere suspicious circumstances not rising to the level of probable cause." He argues, therefore, the seizure of items from the defendant while he was detained pursuant to the arrest was illegal as it violated the defendant's Fourth Amendment rights and the items seized should have been excluded at trial.

As stated in *People v. Payne* (1972), 6 Ill.App.3d 378, 380, 286 N.E.2d 35, 36:

"An arrest without a warrant is justified when a police officer has reasonable grounds to believe that an offense has been committed and that the person he seeks to arrest is the perpetrator of that offense. (Section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1969, ch. 38, par. 107—2(c), *People v. Wright*, 41 Ill.2d 170, 242 N.E.2d 180.) The number or facts necessary to constitute probable cause for an arrest without a warrant depends on the circumstances in each particular case. However, it is not necessary that the information possessed by the officer be admissible at trial or that it be sufficient to prove the suspect guilty beyond a reasonable doubt. (*People v. Marino*, 44

Ill.2d 562, 256 N.E.2d 770; *People v. La Bostrie,* 14 Ill.2d 617, 153 N.E.2d 570.) The test is essentially one of reasonableness. The actions of a policeman in making an arrest without a warrant must be judged in light of all the circumstances confronting the officer who while on the scene must make an immediate selection of a course of action which will preserve individual rights, but at the same time will prevent crime and lead to the apprehension of criminals. *People v. Jones,* 31 Ill.2d 42, 198 N.E.2d 821."

■■ We find that the police had reasonable grounds to believe that the defendant had committed the robbery. The defendant was stopped a block and a half away from where the known getaway car had crashed. He was walking away from the accident and scene; he appeared nervous, was out of breath, and had mud on his pants. When questioned, he stated he was on his way home, yet his home was in the opposite direction. His story as to where he had been and how he got to this place appeared flimsy as he could neither identify the person he had been with nor the car he had driven in.

Defendant concedes that the seizure of the hair sweepings and clothes was valid under *Cupp v. Murphy* (1973), 412 U.S. 291, 36 L.Ed.2d 900, 93 S.Ct. 2000. Therefore, as the arrest was valid, the valid seizure of the items taken while defendant was so detained did not violate defendant's Fourth Amendment rights.

Nevertheless, the defendant contends the clothes and the hair sweepings should have been suppressed because the police violated Ill. Rev. Stat. 1971, ch. 38, sec. 108—2 when the police did not return these items upon the defendant's release that same night. Ill. Rev. Stat. 1971, ch. 38, sec. 108—2 reads in part:

> "If the person arrested is released without a charge being preferred against him all instruments, articles or things seized, other than contraband, shall be returned to him * * *."

Defendant claims that this section has a basis in the Fourth Amendment and represents a legislative codification of it; and that the items retained in violation of this section must be suppressed under the exclusionary rule.

■■ The seizure and retention of these items did not constitute a violation of defendant's Fourth Amendment rights. As stated previously, the defendant was validly arrested and the items were validly seized. The retention of these items after defendant was released was valid because the items could be easily destroyed. See *Cupp v. Murphy, supra.*

■■ Furthermore, the hair sweepings do not constitute "instruments, articles or things" within the meaning of the Statute. "Instruments, articles or things" refer to a person's personal possessions. The terms do

not refer to such items as fingerprints, handwriting exemplars, and dried blood taken from the defendant's person. Therefore, at most, only the retention of the defendant's clothing violated the language of the Statute. As such retention was only a violation of a statutory right and not a constitutional one, the clothing is not subject to the exclusionary rule of evidence and did not require suppression. See *People v. Smith* (1972), 50 Ill.2d 229, 278 N.E.2d 73; *People v. Canaday* (1971), 49 Ill.2d 416, 275 N.E.2d 356.

■■ Defendant argues that the State failed to establish an unbroken chain of possession for certain items introduced in evidence. (See *e.g. People v. Maurice* (1964), 31 Ill.2d 456, 202 N.E.2d 480.) At trial, defendant's counsel did not object to the introduction of these items into evidence or he objected to them on other grounds. An objection to the failure to establish the chain of possession must be made at trial or it is waived on appeal. (*People v. Polk* (1960), 19 Ill.2d 310, 167 N.E.2d 185.) Also, "an objection to evidence based upon a specific ground is a waiver on all other grounds not specified." (*People v. Washington* (1962), 23 Ill.2d 546, 548, 179 N.E.2d 635, 637.) Accordingly, the items' admission into evidence cannot now be questioned by the defendant.

■■ The defendant did object to the admission into evidence of two revolvers, a holster, a revolver clip, and various beards and disguises, on the grounds of relevancy, that is, the items were not properly linked to the defendant. Weapons and instruments used in the commission of a crime may be admitted into evidence where there is proof to connect them with the defendant and the crime. (*People v. Jones* (1961), 22 Ill.2d 592, 177 N.E.2d 112; *People v. Urban* (1942), 381 Ill. 64, 44 N.E.2d 885.) However, the proof connecting the articles to the defendant and the crime may be circumstantial. (*People v. Panczko* (1943), 381 Ill. 625, 46 N.E.2d 28.) Defendant need not be in possession of these articles to connect them to him. *People v. Jones, supra.*

■■ The various beards and disguises were properly admitted into evidence as they were connected to the defendant and the crime. The grocery store owner testified that the robbers wore beards. These beards were later found in the Oldsmobile which was identified by him as the getaway car. The defendant was linked to the getaway car by the automobile safety glass particles found in his hair. Additionally, fibers found in the defendant's jacket pockets matched those in the beard found in the Oldsmobile.

The two revolvers, holster and revolver clip, were irrelevant and of no probative value under *People v. Jones, supra.* The evidence did not sufficiently link the defendant to these items. Both revolvers were found in the vicinity of the crash scene; one revolver was found by a police-

man and the other by a ten-year-old boy. Except for the fact that the defendant was in the area, there was no evidence that he had left these items there to the exclusion of everybody else. There was no evidence that the defendant even owned or carried a revolver. The situation in this case is similar to the one in *People v. Reddock* (1973), 13 Ill.App.3d 296, 300 N.E.2d 31. In *Reddock*, a hatchet was found forty-five feet from the body of the murder victim. An expert testified that the hatchet could have caused the victim's death. However, the only evidence linking defendant to the hatchet was that on the last day the murder victim was seen alive, he was with the defendant in the same nearby city where the hatchet could have been purchased. We therefore ruled that the evidence did not sufficiently link the defendant to the hatchet and consequently the hatchet was inadmissible.

■■ As the revolvers and the accessories could not be connected with the defendant they were inadmissible and should have been excluded. (*People v. Jones, supra.*) In light of all the evidence and testimony at trial, we find, however, that the erroneous admission of these items was harmless error and does not require us to reverse. See *People v. Evans* (1972), 7 Ill.App.3d 52, 286 N.E.2d 576.

■■ Defendant objects on the same ground to the admission of glass particles from Fuller's hair. This evidence however, is highly relevant as a reinforcing link in the chain connecting the glass from the defendant's hair with the identified getaway car. Fuller was seen and captured escaping from the crashed automobile. Glass from Fuller's hair matched glass from defendant's hair; both samples matched the safety glass of the Oldsmobile.

Defendant also objects to the testimony of Officer Meyers concerning two bullets found in the area as being irrelevant in that the bullets were not sufficiently connected to the defendant. Defendant, however, did not object to this testimony at trial, therefore waived this question and cannot now raise it for the first time on appeal. *People v. Linus* (1971), 48 Ill.2d 349, 270 N.E.2d 12.

■■ Defendant next contends that the trial court erred in refusing to give the optional portion of I.P.I. instruction concerning circumstantial evidence. The defendant included only the refused instruction in his abstract. He failed to include in the abstract any other instruction which was given and tendered. The Illinois Supreme Court has stated:

> "Since the suitability of a particular instruction can best be judged by considering it in connection with all other instructions which were given in the specific case, * * * and since this court is not bound to search the record itself to supply abstract deficiencies, * * * we have repeatedly held that error cannot be

predicated upon the giving, refusal, or modification of certain instructions unless all instructions which were given and tendered are completely set forth in the abstract * * *." *People v. Bybee* (1956), 9 Ill.2d 214, 221, 137 N.E.2d 251, 254.

We, therefore, need not consider the defendant's contention. It may be noted had defendant properly preserved this issue for review he would not have succeeded. Under the Committee Note on this instruction, I.P.I. Criminal 3.02, the optional portion of the instruction should be given only when the evidence is *entirely* circumstantial. Rader's identification of the defendant, although not positive, was direct evidence. Rader's identification of the getaway car was also direct evidence. Accordingly, the optional portion of the instruction was correctly not given and tendered to the jury. *See People v. Christiansen*(1969), 118 Ill. App.2d 51, 254 N.E.2d 156.

■■ Defendant's final contention is that he was not proven guilty beyond a reasonable doubt. As stated previously, Rader, apparently because of the disguise used, could not make a positive identification of the defendant. However, "identification of the defendant need not be positive to support a conviction, its weight being a question for the trier of fact to be determined in connection with other circumstances of the case." *People v. Oswald* (1963), 26 Ill.2d 567, 570, 187 N.E.2d 685, 687. Rader did identify the getaway car, a light 1960 Oldsmobile. The police had chased the car until it crashed into another automobile and the occupants attempted to escape on foot. Defendant was taken into custody in the vicinity of the crash. He was disheveled and out of breath. Glass particles were found in his hair which matched glass particles found in co-defendant Fuller's hair and the safety glass of the getaway car. A paint speck in his hair matched the paint on the car which the Oldsmobile crashed into. Fibers found in defendant's clothing matched the beard and moustache found in the Oldsmobile. The robbers used beards and moustaches as disguises during the robbery.

■■ In light of the evidence and testimony given at trial we find that the defendant was proven guilty beyond a reasonable doubt.

For the foregoing reasons the defendant's conviction is affirmed.

Affirmed.

SEIDENFELD and T. MORAN, JJ., concur.