THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON NARD, Defendant-Appellant.

(No. 74-46; )

Second District (1st Division)—October 3, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (James W. Jerz and Robert L. Janes, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was charged with attempt murder and aggravated battery, was tried by a jury, was acquitted as to Count I, attempt murder, and was convicted of aggravated battery. He was granted three years' supervised probation on May 25, 1973. On June 11, 1973, the State's Attorney filed a petition for revocation of defendant's probation on the ground that the defendant did, on June 9, 1973, stab one Lovie Whitfield in the throat with a screwdriver. On August 27, 1973, in a hearing before the trial court, the defendant was found guilty of the violation of the terms of his probation and was sentenced to 3-10 years in the Illinois State Penitentiary. The defendant has appealed, alleging errors in both the trial and the revocation of probation proceedings.

On the night of November 7, 1972, the defendant had a fight with one Virgil McSorley in the Tick Tock Tavern in Waukegan, Illinois. McSorley was taken to the hospital and in surgery, requiring 3½-4 hours, more than 300 stitches were required to repair the cuts on the scalp, face, behind the ear and on the chest. The doctor testified that the condition was caused by a sharp instrument. The defendant was apprehended in a nearby tavern approximately one-half block away. He was taken to the Waukegan police. department and was interviewed by Detective Joiner who advised him of his constitutional rights. Defendant replied that he understood the same and admitted that he was sitting at the bar in the Tick Tock Tavern when he got into a dispute with a white man by the name of Jim which resulted in a fight. When the detective asked the defendant how the subject received the lacerations the defendant replied he did not know and he did not wish to continue the conversation. The interview was then concluded. The victim did not see the knife in the defendant's hand. A witness for the State testified, however, that immediately after the scuffle took place that he saw the defendant go over to the pool table and that he had a knife in his hand. The knife was not recovered.

▮▮ The first contention of defendant is that he was denied a fair trial due to the introduction of testimony that the defendant refused to answer any further questions after being advised of his constitutional rights, as

indicated above, and further that the State's Attorney referred to this in his final argument. The State's Attorney stated:

> "And then, he questioned him. He questioned the defendant. And the defendant admitted he had gotten into a dispute with a large white man over at the Tick Tock. But then when they got down to the point where Joiner asked him how did Virgil get cut, the questioning stopped and the answers stopped."

Defendant contends this is plain error. No objection to this testimony was made. We do not find this to be plain error. Defendant has cited the case of *People v. Hughes* (1973), 11 Ill.App.3d 224, 296 N.E.2d 643, a case from this court, wherein we held that a comment by a witness on defendant's refusal to speak after being warned of his constitutional right to remain silent, constituted error. We do not find that case to be applicable to the one before us. In *People v. Newbury* (1972), 53 Ill.2d 228, 238, 290 N.E.2d 592, 598, the supreme court, in considering a case where the police officer testified that the defendant refused to make a statement after being warned of his constitutional rights, and where no objection was made to the officer's testimony about defendant's refusal, stated:

> "Since there was no pertinent objection at the trial, the defendant cannot now assert that the admission of this testimony violated his constitutional privilege against self-incrimination. *People v. McCorry* (1972), 51 Ill.2d 343, 351; *People v. Linus* (1971), 48 Ill.2d 349, 354-55."

We therefore hold that the statement of the police officer and the comment thereon by the State's Attorney does not constitute reversible error. See also *People v. Pruitt* (1974), 16 Ill.App.3d 930, 938, 307 N.E.2d 142, 149, and *People v. Etten* (1975), 29 Ill.App.3d 842, 331 N.E.2d 270.

Defendant further contends that the trial court "compounded" the alleged error by the giving of the following instruction (IPI Criminal No. 3.06.):

> "You have before you evidence that the defendant made the admissions of facts *relating to* the crimes charged in the indictment.
>
> It is for you to determine whether the defendant made the admissions, and, if so, what weight should be given to the admissions. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was ·made."
> (Emphasis added.)

The defendant admitted he was at the Tick Tock Tavern and had the fight with McSorley. As the instruction states, it was for the jury to determine what weight should be given to the admissions.

■■■ The next contention of the defendant is that the evidence of the victim's injuries and condition and treatment at the hospital was irrelevant and inflammatory and denied the defendant a fair trial. In support of this contention the defendant has cited *People v. Nickolopoulos* (1962), 25 Ill.2d 451, 185 N.E.2d 209, and *People v. Carpenter* (1964), 49 Ill.App.2d 101, 199 N.E.2d 457. We find neither of these cases to be in point. In both *Nickolopoulos* and *Carpenter* the charge was assault with intent to commit murder. The court there held that the extent of the wounds or injuries inflicted was not an issue and the introduction of the same constituted error. As the supreme court said in *Nickolopoulos:*

> "The specific intent required by the charge is found, not from the nature or seriousness of the injury inflicted, but from the proof of the reckless character and manner of the assault, the instrument made use of by the assailant, and other facts and circumstances shown by the evidence as indicating a malicious heart and mind."
> (25 Ill.2d 451, 454, 185 N.E.2d 209, 210.)

That is not the situation in the case before us where the defendant was charged with aggravated battery, that is, that he caused great bodily harm to the victim, as well as attempted murder. The nature and the seriousness of the injury is an essential element of aggravated battery and the proof thereof is proper. Additionally, no objection was made to the introduction of evidence of the seriousness of the victim's injuries. Further, defense counsel introduced, upon cross-examination, the extent of the injuries and commented upon the same in his closing arguments. It is fundamental that the defendant is responsible for the results of his acts and a jury should be allowed to hear what the great bodily harm inflicted consisted of.

■■ Defendant next contends that the defendant was not proven guilty beyond a reasonable doubt. The basis of this argument is that no witness testified that he saw the defendant slash the victim. The only evidence adduced was that of one witness who saw the defendant have a knife in his hand after the fight. In commenting upon this, counsel contends that,

> "* * * even if we accept the doubtful assertion that Nard produced a blade after the fight, there is still doubt that he used it to slash McSorley."

Defendant also contends that there is a reasonable doubt as to whether Nard actually possessed or produced a knife during the fight. This argument is completely unpersuasive. It is admitted that the defendant fought with McSorley and immediately after the fight the victim was found on the floor of the tavern with slashes on his face, his head and

his chest. There was no evidence of any intervening cause of the victim's injuries between the beginning and the end of the fight. The jury was fully justified, and the evidence is overwhelming that the defendant did, in fact, slash the victim with a knife. The jury is not bound to set aside its ordinary judgment and common sense. We find the evidence to be overwhelming that the injuries were inflicted by the defendant with a knife.

■■ Defendant further contends that the court should have given defendant's instruction based on IPI Criminal Instruction No. 3.02:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

The court did, in fact, give this instruction as a People's instruction, omitting the second paragraph. The basis for defendant's contention herein is that the proof offered by the State as to Nard's use of a weapon was entirely circumstantial. This instruction was not designed to cover one phase of the proof in a criminal proceeding. Granted that the evidence of the use of a knife was circumstantial, the rest of the evidence pertaining to the aggravated battery was direct. As the Committee Comment to IPI Instruction No. 3.02 states:

> "The second paragraph should be given only when the proof of guilt is *entirely* circumstantial."

We do not find that the proof of guilt herein is entirely circumstantial. The instruction as given by the court was proper.

Defendant further contends that the court erred in limiting his re-cross-examination of a witness, Jack Phillips, who testified on direct examination that he saw the defendant with a knife after the fight. Defendant contends that this testimony differed from the witness' previous testimony and was inconsistent with a previous statement made by the witness to police officers. Defendant indicated that he was not prepared to prove the allegedly inconsistent statement made to the police. As to the witness' previous testimony, we do not necessarily find this to be inconsistent as the witness, on the stand, testified that he did not see the knife until after the scuffle. If anything, this statement was beneficial to the defendant rather than harmful and we reiterate that the victim was, in fact, cut in the scuffle, suffering the many lacerations outlined above.

We find this not to be error. The testimony sought to be elicited upon re-cross-examination was not new, nor do we find it to be the basis for an impeachment of the witness.

■■ The defendant was found not guilty of Count I of the indictment, charging attempted murder. Counts II and III of the same indictment charged the defendant with aggravated battery. The mittimus herein indicates that the defendant was sentenced on both counts of aggravated battery arising out of the same course of conduct. The State has admitted error in this regard. The mittimus should, therefore, be corrected to reflect but one conviction of aggravated battery, and the cause will be remanded for that purpose.

We then turn to the alleged errors relating to the revocation of probation proceedings. In this regard counsel alleges that the trial court improperly considered evidence at the probation revocation hearing which was not presented, that is, that the trial court based its finding of guilt on Nard's prior conviction for an allegedly similar act rather than a preponderance of the evidence as to the subsequent stabbing offered by the State's Attorney at the hearing. We do not find this to be correct. As a basis for the revocation of defendant's probation evidence was introduced that the defendant stabbed Lovie Whitfield in the throat with a screwdriver. One of the conditions of defendant's probation was that he should not possess any sharp instruments. The court stated: "He was not to have any sharp instruments of any nature whatsoever, knives, razors and so on because of his propensity of cutting and injuring people." The court then went on to state:

> "I think that the State has sustained its burden of proving beyond a reasonable—or by a preponderance of the evidence that Mr. Nard has again assaulted someone * * * the Court finds the Defendant [guilty] of a violation of his probation, specifically those portions dealing with having any sharp instruments and his probation is revoked."

The court further found and stated: "And I find that Miss Whitfield is far more credible in her story than Mr. Nard." It is difficult to see how it can be stated that the court revoked the probation of the defendant on any basis other than that the defendant violated his probation by being in possession of a sharp instrument with which he stabbed another party.

■■ The next contention is that the trial court failed to advise the defendant of his right to a sentencing hearing following the hearing on the probation revocation. This argument is without merit as the record indicates that the defendant, through his counsel, specifically waived a presentence hearing. The record further discloses that defendant was fully

aware of his right to a sentencing hearing and that his lawyer chose to forego the same and requested immediate imposition of sentence.

The conviction of the defendant is affirmed as to one count of aggravated battery; the cause is remanded with directions to correct the mittimus herein to reflect conviction of one count of aggravated battery.

Affirmed and remanded with directions.

SEIDENFELD, P. J., and HALLETT, J., concur.